Francis Shunk **BROWN** 3rd Esq. Trustee in Bankruptcy for I. J. Knight Realty Corp., Appellant,

v.

**PRESBYTERIAN MINISTERS FUND,** a Pennsylvania corporation.

No. 72–1431.

United States Court of Appeals, Third Circuit.

Argued March 9, 1973.

Finally Submitted May 30, 1973.

Decided Sept. 7, 1973.

Arthur E. Newbold, III, Dechert, Price & Rhoads, Philadelphia, Pa., for appellant.

Bernard J. Smolens, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for appellee.

Before BIGGS, HASTIE and GIBBONS, Circuit Judges.

BIGGS, Circuit Judge.

This is a suit brought by Francis Shunk Brown, 3rd, Esquire, Trustee in Bankruptcy for I. J. Knight Realty Corporation (Knight), against Presbyterian Ministers Fund, Inc. (Presbyterian) to recover $97,789.45, together with inter-

est and costs for the benefit of the estate. The following facts are largely undisputed, appearing from the record or stipulated by counsel, or appearing from letters of counsel, or from admissions at a post-argument conference.[1]

I.

In December, 1955, Presbyterian loaned Knight $200,000, secured by a mortgage on the latter's sole physical asset, real estate known as the Fretz Building, located at 10th and Diamond Streets in Philadelphia. Between 1959 and 1962, Knight was in default in amortizing the mortgage, and when in September of 1962, Knight defaulted on the interest due as well, Presbyterian became mortgagee in possession.

The shares of stock of Knight were at this time held as follows: Nathan Hoffman, 325 shares; Jacob Hoffman (Nathan's son), 150 shares; Marvin Hoffman (Nathan's son), 112½ shares; Seymour Hoffman (Nathan's son), 112½ shares. Nathan Hoffman was President of the corporation and Seymour Hoffman was Secretary. Both Nathan and Seymour were directors.[2]

On November 16, 1962, when the principal balance remaining on the mortgage was $149,000, Presbyterian agreed to sell the mortgage to Nathan Hoffman for $65,000. This agreement was entered into with the knowledge and approval of all of Knight's officers, directors, and shareholders.[3] Later on that same day, Knight filed a petition in bankruptcy stating that the corporation was unable to meet its debts as they matured and proposing an Arrangement pursuant to Chapter XI of the Bankruptcy Act. Brown was appointed Receiver and authorized by then District (now Circuit) Judge Van Dusen to conduct the business of Knight. Still later

1. Following the argument in this court, in an attempt to supplement the record in the hope of disposing of the issues in this case on this appeal, the present writer held a conference with the consent of the two other members of the court with a court reporter present, and interrogated counsel as to what he deemed to be relevant facts. The transcript of this conference has been placed with the record in this case by direction of the court.

2. See letter of May 30, 1973 from Bernard J. Smolens, Esquire, counsel for Presbyterian, addressed to the Clerk of this Court.

3. See Stipulation of Facts, paragraph 8.

on the same day, Presbyterian gave to Seymour Hoffman a letter reflecting the agreement and acknowledging receipt of $2,500 on account of the $65,000. An additional $2,500 was to be paid no later than November 26, 1962, and settlement was to be made by January 15, 1963.[4] Presbyterian knew of Knight's bankruptcy petition and that Nathan and Seymour Hoffman were officers and shareholders of Knight. Receiver Brown, on the other hand, was unaware of the agreement between Presbyterian and the Hoffmans.

On November 26, 1962, Presbyterian acknowledged receipt of another $2,500 payment from Seymour Hoffman toward the purchase price.[5]

4. Paragraph 10 of the Stipulation of Facts provides: "Thereafter on November 16, 1962 defendant gave to Seymour S. Hoffman the letter attached hereto, made a part hereof and marked Exhibit 'A' reflecting the agreement referred to in Paragraph 8 hereof. At this time defendant knew of the filing of the aforesaid petition."

Exhibit A to Exhibit 1 of the complant provides:

(Letterhead of)

SCHNADER, HARRISON, SEGAL & LEWIS

1719 Packard Building

Philadelphia 2

November 16, 1962

Mr. Saymour S. Hoffman,
 I. J. Knight Realty Corporation,
 1001–15 Diamond Street,
 Philadelphia 22, Pennsylvania.

Dear Mr. Hoffman:

This is to acknowledge receipt of a Treasurer's check drawn on the Broad Street Trust Company payable to the Presbyterian Ministers' Fund in the amount of $2,500.00. This check was given as a deposit on account of the purchase of the Bond, Warrant and Mortgage, dated December 8, 1955, from I. J. Knight Realty Corporation to the Presbyterian Ministers' Fund. The purchase price is $65,000.00, and it is agreed that an additional deposit in the amount of $2,500.00 must be made no later than November 26, 1962. Settlement is to be made no later than January 15, 1963.

As attorney for the Presbyterian Ministers' Fund I am authorized to accept your offer on condition that the $2,500.00 deposit will be forfeited unless the additional $2,500.00 deposit is received by November 26, 1962, and unless settlement is completed no later than January 15, 1963. A further condition is that the Bond, Warrant and Mortgage are to be purchased under and subject to all presently existing liens and encumbrances and all expenses of the transfer of the Bond, Warrant and Mortgage to you or your nominee, including, but not limited to, Federal documentary stamps, notary and recording fees, are to be borne by you.

Very truly yours,

J. B. Millard Tyson

Attorney for Presbyterian Ministers' Fund

JBMT:rti

5. Paragraph 12 of the Stipulation of Facts provides: "On or about November 26, 1962, defendant gave to Seymour S. Hoffman a letter attached hereto, made a part hereof and marked Exhibit 'B'."

Exhibit B to Exhibit 1 of the complaint provides:

(Letterhead of)

SCHNADER, HARRISON, SEGAL & LEWIS

1719 Packard Building

Philadelphia 2

November 26, 1962

Mr. Seymour S. Hoffman,
 1001–15 West Diamond Street
 Philadelphia 22, Pennsylvania

Dear Mr. Hoffman:

This firm represents the Presbyterian Ministers' Fund. On behalf of the Presbyterian Ministers' Fund, I am authorized to acknowledge the receipt of a deposit in the total amount of $5,000.00 on account of your purchase of the Bond, Warrant and Mortgage, dated December 8, 1955, from I. J. Knight Realty Corporation to the Presbyterian Ministers' Fund for the sum of $65,000.00. The Mortgage is on premises located at the northwest corner of Tenth and Diamond Streets, Philadelphia, and has been recorded in the Office of the Commissioner of Records for the City of Philadelphia in Mortgage Book C.A.B. No. 163, page 308. The original amount of the mortgage loan was $200,000.00, since reduced to $149,000.00, and bears interest at the rate of 5% per annum. Interest has been paid to September 8, 1962.

Settlement must be made no later than January 15, 1963. Upon payment of the balance of the purchase price due and interest to the date of settlement, the Bond, Warrant and Mortgage will be assigned by the Presbyterian Ministers' Fund to you or your nominee, under and subject to all existing liens and encumbrances.

Very truly yours,

J. B. Millard Tyson,

Attorney for Presbyterian Ministers' Fund.

On January 1, 1963, the Fretz Building was totally destroyed by fire. With the advent of insurance proceeds (which amounted to $800,000), Presbyterian deemed itself to be in an excellent position to receive full payment on its mortgage loan if it could avoid its contractual commitment to settle the mortgage for $65,000. J. B. Millard Tyson, Esq., attorney for Presbyterian, testified at an October 16, 1963 hearing before the Referee in Bankruptcy that "[t]hen on the first of January the fire occurred. I promptly told Mr. Hoffman that the basis for having given him this agreement was now over. We did not intend to go through with any sale of the mortgage. * * * So the letter [of November 16, 1962, from Presbyterian to Seymour Hoffman] was still outstanding, but we refused to go through with it. The Ministers' Fund discussed it and decided the purpose was to take this white elephant off our hands, and now we would just be exchanging really two and a half dollars for one dollar. So we wouldn't go through with it at that point."[6] On May 13, 1963, in consideration of the return of the $5,000 "and other considerations,"[7] Nathan and Seymour Hoffman agreed to and purported to release Presbyterian from its obligation to sell the Hoffmans the mortgage.

On May 14, 1963, Knight was declared bankrupt and Receiver Brown was elected Trustee of the bankrupt corporation. Brown was still not aware at this time of the contract to purchase the mortgage, nor its purported cancellation. An insurance settlement of $800,000 was reached with the insurers, Lloyd's of London and other British companies, and on August 23, 1963, Brown petitioned the bankruptcy court for leave to compromise the insurance claims. Hearings were held on this matter on October 16, October 28, and November 7, 1963, and it was then that Brown first learned of the Presbyterian-Hoffman deal and its purported recision. Thereafter, on February 3, 1964, Brown filed an Amended Petition for Leave to Compromise Claim stating in part:

* * * 6. As a result of testimony adduced at the hearings referred to in paragraph 2 of this petition, your *Petitioner now claims an interest in the mortgage on the premises formerly occupied by the Fretz Building, which mortgage is now held in the name of the Presbyterian Ministers' Fund and also claims an interest in the proceeds of insurance payable under the mortgagee payable clause in policy of insurance No. 83872.* [Emphasis added.]

7. Against this background the British Carriers have agreed to pay the full compromise figure of $800,000.00 to your Petitioner upon the following terms and conditions: * * *

(c) That Presbyterian Ministers' Fund release all claims which it may have against the British Carriers under insurance policy No. 83872.

8. * * * [T]he Presbyterian Ministers' Fund refuses to give such a release to the British Carriers unless it is paid the current amount due on such mortgage or unless some other arrangement is made which will insure that it will be paid in full in the event that your Petitioner is unsuccessful in asserting his claim with respect to said mortgage, or in the event that his claim becomes moot.

9. Your Petitioner is informed and therefore avers that the British Carriers will not proceed with the proposed compromise unless it receives a release from the Presbyterian Ministers' Fund.

---

6. Hearing Re: Petition by Trustee for Leave to Compromise Claims against Lloyd's and Companies, Oct. 16, 1963, at 42–44.

7. The "other considerations" for releasing Presbyterian from any obligation in respect to the mortgage are not specified. See Stipulation of Facts, paragraph 16. But it is noted that a $30,000 loan was made by Presbyterian to Seymour Hoffman at the time of the purported cancellation of the contract.

10. In order to effectuate the proposed compromise your Petitioner proposes to enter into an agreement subject to the approval of this court, with Presbyterian Ministers' Fund and the British Carriers pursuant to which Presbyterian Ministers' Fund will release all claims which it may have against the British Carriers under insurance policy No. 83872. The proposed agreement, a copy of which is attached hereto as Appendix A, provides in substance that Presbyterian Ministers' Fund will give a release to the British Carriers, the British Carriers will pay $800,000.00 to your Petitioner out of which your Petitioner will pay to Presbyterian Ministers' Fund $149,000.00 plus interest at the rate of six per cent from September 8, 1962 to the date of payment together with a $7.00 satisfaction fee, such payment being without prejudice to your Petitioner's right to maintain a plenary action against the Presbyterian Ministers' Fund in the United States District Court for the Eastern District of Pennsylvania on any claim your Petitioner may have which arises or in any way grows out of certain letters attached to the proposed agreement (Appendix A) as Exhibits A and B, it being further understood and agreed that your Petitioner shall have the same rights against the Presbyterian Ministers' Fund with respect to said claim as he would otherwise have if such payment had not been made. Presbyterian Ministers' Fund has agreed to consent to the jurisdiction of the United States District Court for the Eastern District of Pennsylvania in any plenary action brought by your Petitioner with respect to said claim.

11. The proposed agreement described in the preceding paragraph of this petition will avoid protracted litigation with respect to the proper tribunal in which your Petitioner's claim should be heard and will also protect the debtor's estate from incurring additional interest liability in the event that your Petitioner is unsuccessful in asserting his claim against the Presbyterian Ministers' Fund, or in the event such claim becomes moot.

12. Your Petitioner believes and therefore avers that it is in the best interest of the bankrupt estate and its creditors to conclude settlement with the insurers under policy No. 83872 upon the foregoing terms and conditions.

WHEREFORE your Petitioner prays that he be authorized:

(i) to accept the sum of $800,000.00 in full accord and satisfaction of his claims against the Underwriters at Lloyd's, London and the British Companies under policy No. 83872;
* * *

(iii) To enter into the proposed agreement attached to this petition as Appendix A and, in accordance with and subject to the terms and conditions of said agreement, to pay to the Presbyterian Ministers' Fund $149,000.00 plus interest at the rate of six per cent from September 8, 1962, to the date of payment plus a $7.00 satisfaction fee.

Referee Curtin's order,[8] dated March 3, 1964, authorized execution of the

---

8. **ORDER**

AND NOW, to wit, this 3rd day of March 1964, upon consideration of the Petition of Trustee for leave to Compromise Claim filed August 23, 1963, the objections, briefs, reports and evidence in respect thereto; upon consideration of the Trustee's Amended Petition for Leave to Compromise Claim, after hearing thereon and on motion of SAMUEL MARX, ESQUIRE and DECHERT, PRICE & RHOADS, Attorneys for Petitioner, it is

ORDERED AND DECREED that the Trustee, Francis Shunk Brown, 3rd, be and he is hereby authorized and directed:

(i) To accept the sum of $800,000.00 in full accord and satisfaction of his claims against the Underwriters at Lloyd's, London and the British Companies on policy of insurance No. 83872;

(ii) To pay therefrom to The First Pennsylvania Banking and Trust Company $2,621.38 plus accrued interest thereon, the

agreement referred to in the above petition and the releases required by the insurers. The agreement between Brown, Presbyterian, and the British Carriers was itself executed on March 23, 1964, pursuant to which the British Carriers paid Brown $800,000 and Brown paid Presbyterian $162,789.45 (which sum represented $149,000 for the unpaid principal balance of the mortgage plus interest on that amount at the rate of six per cent per annum from September 8, 1962, to the date of payment). Paragraph 3 of the agreement was as follows:

> The Fund agrees with Trustee that Trustee's aforesaid payment to the Fund shall be without prejudice to *Trustee's right at anytime within six years following the date hereof to maintain in the United States District Court for the Eastern District of Pennsylvania a plenary action against the Fund on any claim Trustee may have which arises or in any way grows out of the letters attached to this agreement as Exhibits A and B, it being further understood and agreed that Trustee shall have the same rights against the Fund with respect to said claim as he would otherwise have if such payment had not been made. The Fund further agrees that upon the institution of such action in the United States District Court for the Eastern District of Pennsylvania it will consent to the jurisdiction of that Court over the Fund and such action.* (Emphasis added.)

The suit at bar, of course, is the plenary action referred to in Paragraph 3. At the time when the Trustee learned of the agreement between Hoffman and Presbyterian, *viz.,* October or November of 1963, and for the period thereafter, the Trustee believed that the assets in the estate would be sufficient to pay the creditors of Knight Realty, and that therefore there would be no need to pursue the claim relating to the Hoffmans' contract to purchase the mortgage. However, on June 3, 1968, after the Supreme Court's decision in Reading Co. v. Brown, 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968) which rendered the estate subject to liability for fire damage claims in an amount in excess of $3 million, it became clear that the assets in Knight's estate would not be enough to pay all creditors in full, and the Trustee at that time determined that he must bring his suit.[9]

---

balance owing upon premium financing arrangements;

(iii) To enter into an agreement with the Presbyterian Ministers' Fund and the Underwriters at Lloyd's, London and the British Companies on policy of insurance No. 83872, a copy of which agreement is attached as Appendix A to the Trustee's Amended Petition for Leave to Compromise Claim and, in accordance with and subject to the *terms and conditions of that agreement,* to pay to Presbyterian Ministers' Fund $149,000.00 plus interest at the rate of six per cent from September 8, 1962, to the date of payment together with a $7.00 satisfaction fee;

(iv) To give *proper releases and execute all documents incident to the foregoing.*

AND IT IS FURTHER ORDERED AND DECREED that payment by the Underwriters and the British Companies shall be effected within thirty (30) days after this Order becomes final and not subject to appeal; PROVIDED, HOWEVER, that any obligation to make such payment shall be conditioned upon delivery of releases of all claims against the Underwriters at Lloyd's, London and the British Companies on policy No. 83872 by Francis Shunk Brown, 3rd, Trustee; I. J. Knight Realty Corp., bankrupt; and the Presbyterian Ministers' Fund.

/s/ THOMAS J. CURTIN,
REFEREE
Thomas J. Curtin, *Referee.*

9. In November, 1969, Trustee Brown petitioned Judge Hannum for leave to commence a civil action against Presbyterian in keeping with the provisions of paragraph 3, and on the 20th day of November, 1969, Judge Hannum entered an order authorizing this suit which was duly filed on December 4, 1969. The day of the filing of the petition in November does not appear from the record.

The reason for the delay was obvious. The Referee in Bankruptcy held that the estate would not be liable for Reading Company's claim for fire damage. The District Judge reviewed the decision of the Referee and held, as did this Court, that the Referee's order was proper. The Supreme Court reversed, thus setting up the possibili-

In essence, Trustee Brown is seeking to enforce Presbyterian's agreement to sell the mortgage to Nathan Hoffman. The legal theory asserted, as accurately stated by the district court, is that Presbyterian's "offer of sale constituted a corporate opportunity available to Knight; that Nathan Hoffman's acquisition of that opportunity constituted a breach of his fiduciary duty to act in good faith for the best interest of Knight as one of its officers; that the corporation, through the Trustee, is entitled to impress a constructive trust upon 'the deal'; and that, although the agreement was terminated before the Trustee asserted any claim to it, the corporation is entitled to its specific performance in order to conserve the *res* of the constructive trust." 340 F.Supp. at 750. The $97,789.45 sought by Brown constitutes the difference between the $162,789.45 paid to Presbyterian on the mortgage and the $65,000 price for which Presbyterian had agreed to sell the mortgage to Nathan Hoffman.

Judge Hannum rendered summary judgment in favor of Presbyterian on the following basis:

By way of defense, the [Presbyterian] Fund first argues that Hoffman's agreement to purchase the mortgage at a discount was not a corporate opportunity because the corporation was insolvent and unable to avail itself of the opportunity. Second, assuming that a corporate opportunity did exist, the Fund argues that Hoffman never usurped it for the acquisition was with the full knowledge and approval of the corporation. Third, the defendant asserts that even if Hoffman did breach a fiduciary duty owed to the corporation, no cause of action lies against the mortgagee as an innocent third party owing no fiduciary duty to the corporation. Without intimating a view as to the first and third argu-

ments, this Court finds the second to be dispositve of the case.

Like the business corporation laws of other states, Pennsylvania imposes a fiduciary obligation upon corporate officers to act in good faith for the best interest of the corporation they serve. In Pennsylvania it is clear that corporate officers may not usurp opportunities available to the corporation. Lutherland, Inc. v. Dahlen (1947), 357 Pa. 143, 151, 53 A.2d 143, 147. In this regard, it has been held that the availability of a corporate debt for purchase at a discount constitutes a 'corporate opportunity'. Weissman v. Weissman, Inc. (1953), 374 Pa. 470, 97 A.2d 870. So also, it is clear that if a corporate officer, in breach of his fiduciary duty personally acquires property constituting a corporate opportunity, that property may be subject to a constructive trust for the benefit of the corporation. Weissman v. Weissman, Inc., *supra*; Bailey v. Jacobs (1936), 325 Pa. 187, 194–195, 189 A. 320. Recognizing, therefore, the existence of a corporate opportunity in the present case, and assuming *arguendo* that the corporation was capable of seizing it, the question becomes whether there exists any circumstance under which a corporate officer may acquire such an opportunity for himself.

This Court regards the proposition that a corporation need not acquire all corporate opportunities presented to it as axiomatic. The fiduciary duty imposed upon corporate officers and directors requires them to disclose opportunities available to the corporation. Once aware of the opportunity the corporation may seize or ignore it. If the directors and shareholders, once aware of its existence, consent to the acquisition of an opportunity by an officer or director, the opportunity

ty of substantial liability of the estate to the Reading Company. See, In re I. J. Knight Realty Corporation, 242 F.Supp. 337 (E.D. Pa.1965), 370 F.2d 624 (3 Cir. Court en banc, 1967); Reading Company v. Brown, 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968).

ceases to be corporate and the fiduciary is free to acquire it personally. See Weissman v. Weissman, Inc., *supra*, 374 Pa. at 475, 97 A.2d 870.

By stipulation in the present case the parties have agreed that Hoffman's acquisition of the mortgage was with the 'knowledge and approval of all of Knight's officers, directors and shareholders.' In the view of this Court such corporate assent relieved Hoffman of any further fiduciary duties. Having breached no duty to the corporation, plaintiff has no cause of action. [340 F.Supp. at 750].

■ We cannot countenance such a narrow view of the scope of Hoffman's fiduciary duty. As an officer, director, and principal stockholder of an insolvent corporation (as well as being its mind, hands and pockets), Nathan ·Hoffman was duty bound to act "with absolute fidelity to both creditors and stockholders." Drury v. Cross, 74 U.S. (7 Wall.) 299, 302, 19 L.Ed. 40 (1868). "While normally that fiduciary obligation is enforceable directly by the corporation, or through a stockholder's derivative action, it is, in the event of bankruptcy of the corporation, enforceable by the trustee. For that standard of fidcuiary obligation is designed for the protection of the entire community of interests in the corporation—creditors as well as stockholders." Pepper v. Litton, 308 U.S. 295, 307, 60 S.Ct. 238, 245, 84 L.Ed. 281 (1939). See also, McCandless v. Furland, 296 U.S. 140, 56 S.Ct. 41, 80 L.Ed. 121 (1935), Rabinovitz v. Oughton, 92 F.2d 297 (3 Cir. 1937), cert. denied, 303 U.S. 649, 58 S.Ct. 746, 82 L.Ed. 1110 (1939), and Teasdale v. Robinson, 290 F.2d 108 (8 Cir. 1961).

■■ We decline to accept the position that approval by the shareholders, officers, and directors of a closely held corporation will free an officer thereof, acting with knowledge of the corpora-

tion's insolvency and on the very morning of the institution of bankruptcy proceedings, to appropriate corporate opportunities (or, for that matter, any corporate assets) to the detriment of the corporation's creditors. As Mr. Justice Cardozo most aptly stated in *McCandless, supra*, 296 U.S. at 157, 56 S. Ct. at 46, "The interests affected by approval will shape the power to approve." The approval present in the case at bar cannot then render fair what is unfair to the creditors, for they are also a part of the corporation's community of interest which the law seeks to protect. United Hotels Co. of America, Inc. v. Mealey, 147 F.2d 816, 819 (2 Cir. 1945). These principles are consistent with the prevailing rule in Pennsylvania, that "[i]f all the stockholders of the corporation consent, *and it is not detrimental to creditors,* officers may appropriate corporate assets." Stony Brook Lumber Co. v. Blackman, 286 Pa. 305, 309, 133 A. 556, 557 (1926), (quoting 2 Fletcher Cyc. Corp. (1st Ed.) § 2507). (Emphasis added.) While most business opportunities may not be advantageous to a corporation or its creditors when the corporation is in bankruptcy and is no longer a going concern, certainly the opportunity to purchase its debts at a discount is of substantial benefit to the corporation and especially its creditors at that time. Moreover, where, as here, a corporation is undergoing Arrangement pursuant to Chapter XI, the opportunity to settle its secured debts at a discount is of significant advantage to the corporation and particularly its unsecured creditors, for assets are thereby freed toward the satisfaction of unsecured debts. We therefore cannot agree with the holding below that the corporate assent here relieved Nathan Hoffman of any further fiduciary duties. The opportunity should have been disclosed to the receiver as representative of the creditors.[10]

10. The fact that Hoffman entered into the agreement to purchase the mortgage a few hours before the Chapter XI petition was filed, and therefore prior to the appointment of the receiver, does not free him from the obligation to have informed the receiver in view of his knowledge of the oncoming Chapter XI proceedings. That Hoffman

Presbyterian contends that the grant of summary judgment in its favor can be upheld on the alternative ground that no cause of action lies against it as an "innocent" third party owing no fiduciary duty to the corporation. It places reliance on that part of Irving Trust Co. v. Deutsch, 73 F.2d 121 (2 Cir. 1934), cert. denied, 294 U.S. 708, 55 S.Ct. 405, 79 L.Ed. 1243 (1935), which held that defendant Reynolds & Co. was not liable for profits which the directors of Acoustic had derived from purchasing a "corporate opportunity" of Acoustic from Reynolds & Co. The court there stated, 73 F.2d at 125, " * * * Reynolds & Co. had the right to sell to whomever it could * * *. No right of Acoustic was violated in so doing * * *. Since it received no benefit from the transaction aside from completing the sale of the stock and there is no proof that it acted in a conspiracy to deprive Acoustic of a valuable asset, it cannot be held to an accounting."

■ This reliance on *Irving Trust Co.* is misplaced, for unlike the plaintiff in that case, Trustee Brown does not seek to hold the seller (Presbyterian) of a "corporate opportunity" liable for profits made by the buyer-fiduciary (Hoffman). Rather, Brown is attempting to enforce the buyer-fiduciary's purchase. While the seller (Presbyterian) may have had a right to sell to whomever it could and owed no duty to the buyer-fiduciary's corporation (Knight), such principles are totally irrelevant to the questions concerning the enforceability of the sale when made.

■ Another alternative ground urged by Presbyterian in support of the grant of summary judgment concerns the financial inability of Knight to have availed itself of the opportunity to purchase the mortgage at a discount. This argument, however, assumes facts not presently in the record. Whether Knight could not have obtained the necessary funds or credit to have entered into an agreement to purchase the mortage presents an issue of fact which must be determined by the District Court on remand.

## II.

The parties argued the case in the court below without reference to any cogent provision of the Bankruptcy Act and the learned District Judge decided the case without benefit of any provisions of the Act. We think additional grounds other than those argued below must be considered if justice is to be done. Bankruptcy courts are courts of equity.[11] Having the foregoing in mind, we will express our views as fully as we think is permissible at this state of the proceedings.

■ We have repeatedly stated that we can consider the record only as it existed at the time the court below made the order dismissing the action. Williams v. Murdoch, 330 F.2d 745 (3 Cir. 1964), note 3 cited to the text. See Dictograph Products Co. v. Sonotone Corporation, 230 F.2d 131, 231 F.2d 867 (2 Cir. 1956), appeal dismissed by stipulation, 352 U.S. 883, 77 S.Ct. 104, 1 L.Ed. 2d 82 (1956). As we have said, however, we cannot decide all the issues on this record nor can we bind the court below on any statement of facts as set out hereinbefore. We are not a fact-finding body for that duty rests with the district court to whom this case will be remanded. The district court also must determine the applicable law. We think, however, it is appropriate for us to point out certain principles which may determine the issues.

As we have indicated and as we here reiterate, precisely, the asset which Trustee Brown seeks to claim for the es-

---

was aware of the impending bankruptcy is indisputable because the Resolution to file the Chapter XI petition was adopted by the shareholders and signed by Hoffman as President of Knight on November 14, 1962.

11. An examination of the briefs filed in the District Court demonstrates the parties made no reference to any cogent provision of the Bankruptcy Act therein.

tate by way of the corporate opportunity doctrine is the executory contract to purchase the mortgage from Presbyterian. In this regard we note the requirement of Section 70(b) of the Bankruptcy Act as it existed at the time here relevant, 11 U.S.C. § 110(b) (1964 Ed.), for Brown to have "assumed" the executory contract within the time limits specified. Otherwise his claim to the contract must fall victim to the conclusive statutory presumption that he rejected the contract. Section 70(b), as it was at the time of the transactions involved herein, 11 U.S.C. § 110(b) (1964 Ed.), read in pertinent part as follows: "(b) The trustee shall assume or reject an executory contract, including an unexpired lease of real property, within sixty days after the adjudication or within thirty days after the qualification of the trustee, whichever is later, but the court may for cause shown extend or reduce the time. Any such contract or lease not assumed or rejected within that time shall be deemed to be rejected. If a trustee is not appointed, any such contract or lease shall be deemed to be rejected within thirty days after the date of the order directing that a trustee be not appointed. A trustee shall file, within sixty days after adjudication or within thirty days after he has qualified, whichever is later, unless the court for cause shown extends or reduces the time, a statement under oath showing which, if any, of the contracts of the bankrupt are executory in whole or in part, including unexpired leases of real property, and which, if any, have been rejected by the trustee  *  *  *."

■ Assuming *arguendo*, and this question is also one for the district court to decide, that the time period within which the contract must be assumed would not begin to run until the trustee first learned of the contract's existence, which seemingly occurred on October 16, 1963, it is critical whether the trustee thereafter complied with Section 70(b). It appears that the first written assertion of a claim to the mortgage by Trustee Brown was on February 3, 1964, when Brown filed the Amended Petition for Leave to Compromise Claim. But the Act does not provide any formal manner in which the trustee shall make the assumption, and the assumption of an executory contract may be shown by acts or oral statements of the trustee as well as by formal written declaration. Nostromo, Inc. v. Fahrenkrog, 388 F.2d 82 (8 Cir. 1968); In re Public Ledger, Inc., 161 F.2d 762, 765, n.1 (3 Cir. 1947). See also In re Forgee Metal Products, Inc., 229 F.2d 799 (3 Cir. 1956), and In re McCormick Lumber and Mfg. Corp., 144 F.Supp. 804 (D. Or.1956). Such conduct and oral statements may have occurred, for example, at negotiations which took place between the parties subsequent to the November 7, 1963 hearing before Referee Curtin, culminating in the agreement dated March 23, 1964. But the record does not reveal what transpired at these negotiations or whether, to what extent, if any, and when Trustee Brown asserted ownership of the contract to purchase the mortgage. It will be the duty of the trial court upon remand to explore this situation and make appropriate findings of fact and conclusions of law.

We further point out that the rights of the plaintiff to bring this suit were preserved for six years following the date of the March 23, 1964 agreement. Thus the rights as of March 23, 1964 were preserved. But what were those rights on that date, a considerable period of time past the date of the trustee's knowledge of the existence of the executory contract? Unless the trustee assumed the contract as required by Section 70(b), it may appear that he no longer had rights in the executory contract to preserve.

The foregoing appear to be questions and issues which lurk in this case.[12]

12. Additional questions, not presented to or considered by the trial court in the motions for summary judgment, have been raised in this court concerning the enforceability of the Hoffman-Presbyterian agreement. Such issues as whether the agreement lapsed

There may be others unrecognized by us which are as cogent. We think we are entitled to a full examination of them by the district court or to such of them as the learned District Judge deems pertinent. He need not limit his inquiries to the issues or questions which we have raised. Indeed, he should not do so. The instant case is indeed one of great complexity.

The judgment of the district will be vacated and the case remanded to the end that the trial court may receive such further evidence as may be relevant and take further proceedings not inconsistent with this opinion.

when performance was not tendered by Nathan or Seymour Hoffman before January 15, 1963, as required by the contract, or whether Presbyterian first reneged on the deal, involve mixed questions of fact and law and should also be considered on remand by the district court.