Robert A. DONNER, Individually and t/a Radon Arts Management, Bankrupt; Larry H. Slass, Esquire, Trustee, and Robert A. Donner, Individually and t/a Radon Arts Management, Plaintiffs,

v.

TAMS–WITMARK MUSIC LIBRARY, INC., Louis H. Aborn, Chappell & Co., Inc., Robin Hood Dell Concerts, Inc., Frederic R. Mann and The Gershwin Estate by Ira Gershwin, Trustee, Defendants.

Civ. A. No. 78–2895.

United States District Court,
E. D. Pennsylvania.

Dec. 3, 1979.

John F. Hunt, Spector, Cohen, Hunt & Rosen, Philadelphia, Pa., for plaintiffs.

James A. Drobile, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for Tams-Witmark and Aborn.

## OPINION AND ORDER

EDWARD R. BECKER, District Judge.

### I. *Preliminary Statement*

Defendants Tams-Witmark Music Library, Inc. ("Tams-Witmark") and Louis H. Aborn ("Aborn") have moved for dismissal of the complaint as to them for lack of personal jurisdiction and for improper venue. The motion presents several interesting questions of "minimum contacts" analysis under the new Pennsylvania long-arm statute, 42 Pa.C.S. § 5321 et seq., and *International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the most significant of which is whether the allegedly tortious acts of the individual defendant Aborn, in his corporate capacity, constitute sufficient contacts with this forum to support jurisdiction over him as an individual.

Tams-Witmark is a New York corporation engaged in the business of licensing "dramatico-musical"[1] works nationwide in secondary markets, primarily stock and amateur companies. Its only place of business is in New York City. Aborn is the presi-

---

1. "Dramatico-musical" is a term used by the parties to refer to works like *Porgy and Bess*, which include musical compositions embedded in a dramatic context, and to distinguish such works from the musical compositions themselves. Plaintiffs claim that Donner's rights to the "dramatico-musical" work *Porgy and Bess* were infringed by a performance of musical compositions from *Porgy and Bess*, which they allege was "in effect a full-scale performance of that opera."

dent of Tams-Witmark and has held that position since 1956. By a copyright license agreement dated March 31, 1976, Tams-Witmark granted to plaintiff Donner, doing business under the name of Radon Arts Management, the right to produce performances of the Gershwin opera *Porgy and Bess.* The agreement was negotiated by telephone and correspondence between Donner in Philadelphia and Aborn in New York City. It was signed by Donner in Pennsylvania, then was mailed to New York City where it was signed by Aborn for Tams-Witmark. Subsequently, the agreement was returned to Donner through the mail by a New York lawyer.

During the term of Donner's license, the Philadelphia Orchestra performed musical selections from *Porgy and Bess.* Plaintiffs claim that this performance infringed Donner's rights under the copyright license agreement. They allege that as a result of this infringing performance, Donner's production of *Porgy and Bess* closed at a substantial deficit, forcing him to declare bankruptcy. Plaintiffs here are both the bankrupt estate and Donner suing individually.

Plaintiffs allege that Tams-Witmark and Aborn committed acts of infringement by consenting to the Philadelphia Orchestra performance and permitting it to be held despite their knowledge of the impending infringement. They also assert claims against Tams-Witmark and Aborn for unfair competition, fraudulent misrepresentation, and breach of contract.

Tams-Witmark has no employee or representative located or stationed in Pennsylvania, has no office or post office address here, is not listed in any Pennsylvania telephone or other directory, maintains no bank account here, and pays no taxes to the Commonwealth or any of its subdivisions. However, it was developed by discovery taken in connection with these motions that Tams-Witmark has entered regularly into license agreements and other contracts for performances of musical and dramatic works with Pennsylvania residents or for performances to take place in Pennsylvania. During the years 1973 to 1976, these agree-ments numbered 300 to 400 per year. Tams-Witmark maintains four mailing lists for promotional materials; each list includes more than 1900 addresses in Pennsylvania.

Acting in his corporate capacity, Aborn negotiated and executed the agreement on which plaintiffs sue. He signed all correspondence with Donner pertaining to the license agreement and the allegedly infringing performance. Among the correspondence is a letter which plaintiffs claim was a misrepresentation inducing Donner to make royalty payments. In the same letter, Aborn stated that Tams-Witmark had communicated with defendant Chappell and Company, the alleged licensor of the Philadelphia Orchestra performance, and with Ira Gershwin in regard to the impending performance of musical selections by the Philadelphia Orchestra; that statement makes it clear that Aborn had personal notice of the allegedly infringing performance. However, none of Aborn's activities were undertaken in an individual capacity and it is conceded that Aborn's activities as an individual in a non-corporate capacity do not include contacts with Pennsylvania sufficient to establish jurisdiction. Plaintiffs contend, nevertheless, that the court has personal jurisdiction over Aborn because of his acts as president of Tams-Witmark and because of the rule of joint and several liability of a corporate officer for tortious conduct in which he personally participates.

Against this background, we turn to a discussion of the applicable law.

## II. *Discussion*

■■■ The in personam jurisdiction of this court is coextensive with that of the Pennsylvania courts. Fed.R.Civ.P. 4(e). The relevant Pennsylvania statute provides that jurisdiction over all persons shall extend "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa.

C.S. § 5322(b).[2] Accordingly, the court has personal jurisdiction over the defendants so long as the constitutional standard of "minimum contacts" is satisfied; we need not consider any other legal tests in order to find jurisdiction.

■ With respect to jurisdiction over the corporate defendant Tams-Witmark, our decision is controlled by two recent decisions of the United States Court of Appeals for the Third Circuit. In *Empire Abrasive Equipment Corp. v. H.H. Watson, Inc.*, 567 F.2d 554, 557–58 (3d Cir. 1977), the court of appeals set out a two-part test for resolution of minimum-contacts problems, based on (1) the state's interest in adjudicating a dispute within its borders, and (2) the possible unfairness of compelling a party to litigate in a distinct forum.

In *Empire*, a Pennsylvania mail-order seller brought a diversity action against its Rhode Island buyer and the latter's Rhode Island bank. The court of appeals determined that the first part of the test was satisfied, both as to the buyer and as to the bank, by Pennsylvania's interest in its corporate resident seller of goods. Judge Gibbons explained that "Pennsylvania is the corporate residence of the plaintiff beneficiary [of a letter of credit], and the letter of credit was issued in connection with the sale of goods by that Pennsylvania seller. These contacts establish some Pennsylvania sovereign interest." *Id.* at 558. With respect to the second part of the test, the court of appeals looked to the "expectations of the parties to the transaction." *Id.* Although the court found no sufficient expectations to support jurisdiction over the bank, it remanded for further discovery on matters related to jurisdiction over the buyer. While a single isolated mail-order transaction might not suffice to subject the buyer to Pennsylvania jurisdiction, the sell-

er in *Empire* alleged that there were prior dealings between the parties; that the nature of the product ordered required the seller to enter into subcontracts with other vendors; and that the buyer initiated the negotiations. *Id.* at 558–59. The Third Circuit found these three factors relevant, and remanded for discovery on all.

In the present action, the first *Empire* test is satisfied: Pennsylvania has the same interest in a resident copyright licensee who produces musical performances as it does in a resident seller of industrial equipment. Application of the second test here is not entirely clear, but the facts which support jurisdiction here are analogous to the allegations which the Third Circuit found relevant in *Empire*. Tams-Witmark has had prior dealings with other Pennsylvania residents, and engaged in a protracted course of negotiations with Donner: eight letters signed by Aborn were sent to the plaintiff in 1976. Most significantly, the nature of the "product" licensed required the Pennsylvania licensee to enter into subcontracts with theaters, actors, and others. While *Empire* is not dispositive, it suggests strongly that jurisdiction exists here.

In *Edy Clover Productions, Inc. v. National Broadcasting Company, Inc.*, 572 F.2d 119 (3d Cir. 1978), the Third Circuit applied the *Empire* tests to find jurisdiction in a suit for copyright infringement. Plaintiffs in *Edy Clover* claimed that their copyright was infringed by the broadcast from New York to New Jersey of a television show program which had been produced in California. The California producer challenged the New Jersey federal court's in personam jurisdiction. The court of appeals found, first, that the state had an interest in providing a forum because of its interest in protecting its residents from interstate transmissions which infringe their copy-

---

2. The new Pennsylvania long-arm statute, 42 Pa.C.S. § 5321 et seq., became effective June 27, 1978. The complaint in this action was filed on August 29, 1978, and the moving defendants were served by mail received on or about September 5, 1978. The old Pennsylvania long-arm statute, 42 P.S. § 8301 et seq. (repealed), extended jurisdiction to the limits of due process with respect to nonresident corporations but not individuals. *Columbia Metal Culvert Co. v. Kaiser Industries Corp.*, 526 F.2d 724 (3d Cir. 1975). The new statute exercises full constitutional power over individuals as well. *See Bean v. Winding River Camp Ground*, 444 F.Supp. 141, 145 n.6 (E.D.Pa.1978) (Broderick, J.).

rights. Addressing the second part of the *Empire* test, the court of appeals held:

It is also clear that a producer of a television program, who knows that the production will be transmitted interstate, can anticipate that infringement may result at places remote from the place of production. There is, therefore, no unfairness in requiring the producer to answer such a charge in the state in which it arises.

572 F.2d at 120–21. It is equally clear that a licensor of dramatico-musical works, who knows that the work will be produced in Pennsylvania, and who covenants not otherwise to license the play for performance in metropolitan Philadelphia, can anticipate that infringement may result in Pennsylvania. As a result, *Edy Clover* requires this court to exercise in personam jurisdiction over Tams-Witmark on the basis of the corporation's ability to anticipate that copyright infringement might occur in Pennsylvania.[3]

■■ Thus, we find that the contacts of Tams-Witmark with Pennsylvania are sufficient to support our jurisdiction over the corporate entity. By the same token they would support personal jurisdiction over Aborn if he had engaged in the activities mentioned above as an individual. However, as a rule the courts have declined to exercise personal jurisdiction over individuals for their acts done in a corporate capacity. *Miller v. American Telephone & Telegraph Company*, 394 F.Supp. 58 (E.D.Pa. 1975) (Bechtle, J.), aff'd mem., 530 F.2d 964 (3d Cir. 1976); *Lehigh Valley Industries, Inc. v. Birenbaum*, 527 F.2d 87 (2d Cir. 1975); *Weller v. Cromwell Oil Co.*, 504 F.2d 927 (6th Cir. 1974); *Wilshire Oil Company of Texas v. Riffe*, 409 F.2d 1277 (10th Cir. 1969); 4 Wright & Miller, Federal Practice & Procedure § 1069 (1978 Supp. at 39–40).

■ Plaintiffs argue that Aborn is subject to the court's personal jurisdiction because decisions under the copyright statute have made individual corporate officers jointly and severally liable for infringement with their corporations. They argue that activities in a corporate capacity which are sufficient to create liability against an individual should be sufficient to confer personal jurisdiction. We agree, although we find it unnecessary to reach the question whether the personal liability of a corporate officer for copyright infringement is any broader than his personal liability as a joint tortfeasor.

■ The Third Circuit has held that corporate officers are personally liable for alleged tortious conduct of the corporation if they personally took part in the commission of the tort, or if they specifically directed other officers, agents or employees of the corporation to commit the act. *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978); *Zubik v. Zubik*, 384 F.2d 267, 275 (3d Cir. 1967), cert. denied, 390 U.S. 988, 88 S.Ct. 1183, 19 L.Ed.2d 1291 (1968). Plaintiffs' claims against Tams-Witmark and Aborn are predominantly tortious in nature. Copyright infringement is essentially a tort, *Porter v. United States*, 473 F.2d 1329, 1337 (5th Cir. 1973); *Screen Gems-Columbia Music, Inc. v. Metlis and Lebow Corp.*, 453 F.2d 552 (2d Cir. 1972). Unfair competition is a tort, *Donsco, supra*, and fraudulent misrepresentation is a tort, see 1 F. Harper & F. James, The Law of Torts § 7 (1956). Consequently, the Third Circuit rule of joint tortfeasor liability of corporate officers is applicable in this case.

Plaintiffs' claims of fraudulent misrepresentation are premised on acts which Aborn himself performed in his corporate capacity. The claims of copyright infringement and unfair competition against these defendants are premised on their failure to act despite their knowledge of the impending Philadelphia Orchestra performance. It is clear that Aborn was notified personally, albeit in his corporate capacity, of the impending performance. Thus the allegedly tortious acts and omissions of the corporate entity Tams-Witmark are alleged to have been

---

3. "Where there is a wide spread commercial enterprise which defendant knows will reach the forum state there is nothing unjust in re-quiring the defendant to defend there." *Heckel v. Beech Aircraft Corp.*, 467 F.Supp. 278, 283 (W.D.Pa.1979), citing *Edy Clover, supra*.

committed personally by Aborn, acting in his corporate capacity. If Tams-Witmark is ultimately found liable for copyright infringement, unfair competition, or fraudulent misrepresentation, Aborn will, under the Third Circuit rule, be subject to personal liability as a joint tortfeasor.[4]

The crucial issue is whether we may infer from acts which are sufficient to create personal liability, if proved, to contacts which are sufficient to confer personal jurisdiction over the individual defendant. There is direct support for such an inference in recent case law in the Third Circuit. In *Vespe Contracting Co. v. Anvan Corp.*, 433 F.Supp. 1226 (E.D.Pa.1977) (Bechtle, J.), the court denied a pre-discovery motion to dismiss for lack of personal jurisdiction. Judge Bechtle applied the joint-tortfeasor rule of personal liability to determine that the individual defendants had committed tortious acts sufficient to confer long-arm jurisdiction under the old Pennsylvania statute. *Id.* at 1233 n.11. He then looked to the same acts to determine that personal jurisdiction would not violate the constitutional standard. *Id.* at 1234–35. In *Lighting Systems, Inc. v. International Merchandising, Inc.*, 464 F.Supp. 601 (W.D.Pa.1979), Judge Knox stated that "a corporate officer who personally commits a tort in his capacity as an officer of the corporation can be held along with the corporation. This is

sufficient to establish personal jurisdiction . . . ." *Id.* at 604. While this case too was decided under the old long-arm statute, again the court determined that due process requirements were met. *Id.*

We think that this result is the only sensible one. It would be anomalous, and would defeat the purposes of the law creating substantive liability, to permit a corporate officer to shield himself from jurisdiction by means of the corporate entity, when he could not interpose the same shield as a defense against substantive liability. Therefore we hold that Aborn's allegedly tortious conduct in his capacity as president of Tams-Witmark may be considered to determine whether the court has jurisdiction over Aborn as an individual defendant. For the reasons stated above with respect to Tams-Witmark, we find that Aborn's conduct includes sufficient contacts with this forum to make Aborn subject to the personal jurisdiction of this court.[5]

The federal copyright venue statute provides that suit may be brought in any district in which the defendant "may be found." 28 U.S.C. § 1400(a). Decisions interpreting this phrase hold that a defendant "may be found" wherever he is amenable to personal jurisdiction. *Battle Creek Equipment Co. v. Roberts Manufacturing Co.*, 460 F.Supp. 18, 21–22 (W.D.Mich.1978); *Mode*

---

4. It is therefore unnecessary for us to decide at this juncture whether or not we should adopt the more expansive Second Circuit rule of personal liability for copyright infringement. Cases in the Second Circuit have held that a person is liable for copyright infringement whenever he had the right and ability to supervise the infringing activity and also had a direct financial interest in the activity. *E. g., Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971); *Lottie Joplin Thomas Trust v. Crown Publishers*, 456 F.Supp. 531, 537 (S.D.N.Y. 1977), *aff'd.* 592 F.2d 651 (2d Cir. 1978). If we were to adopt that rule, it would constitute an alternate ground for personal liability of Aborn on the copyright infringement claim, and therefore it would also be an alternate ground for our ultimate holding that Aborn is subject to the personal jurisdiction of this court.

5. Although our personal jurisdiction over Aborn depends on the tortious character of

plaintiffs' claims against him, extraterritorial service may be effective to confer in personam jurisdiction for pendent state law claims which would not support the exercise of personal jurisdiction if they were asserted independently. *Robinson v. Penn Central Co.*, 484 F.2d 553 (3d Cir. 1973). *See International Controls Corp. v. Vesco*, 593 F.2d 166, 175 n.5 (2d Cir.) *cert. denied*, 442 U.S. 941, 99 S.Ct. 2884, 61 L.Ed.2d 311 (1979). Plaintiffs' claim against Aborn for breach of contract is therefore within our pendent jurisdiction and we may entertain that claim if "considerations of judicial economy, convenience and fairness to litigants" so require. *Robinson, supra*, 484 F.2d at 556, *quoting United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Since the contract claim against Aborn arises from the same facts as plaintiffs' other claims, we find that those considerations justify our exercise of personal jurisdiction over the pendent claim for breach of contract.

*Art Jewelers Co. v. Expansion Jewelry Ltd.,* 409 F.Supp. 921 (S.D.N.Y.1976). The language of 28 U.S.C. § 1400(a) makes no distinction between corporate defendants and individual defendants, and we can discern no reason for any such distinction. Consequently, venue in this judicial district is also proper.