528 A.2d 649

Nicholas BABICH, Appellant,

v.

George KARSNAK, Joan Karsnak, his wife, Columbia Chase Corp., Columbia Fluidized Coal Energy, Inc., Columbia Chase Combustion Division, Edward L. Chase, Francis M. Chase, Surftex Company, Inc., and L. Sheldon Daly (Two Cases).

Superior Court of Pennsylvania.

Argued Feb. 3, 1987.

Filed June 29, 1987.

Lindsley W. Love, Pittsburgh, for appellant.

David E. Tungate, Pittsburgh, for Columbia Chase Corp., Columbia Fluidized Coal Energy, Inc., Columbia Chase Combustion Div., Edward L. Chase, Francis M. Chase, Surftex Co., Inc., and L. Sheldon Daly, appellees.

Before BROSKY, JOHNSON and MONTGOMERY, JJ.

JOHNSON, Judge:

This case arises from an amended complaint filed by plaintiff-appellant Nicholas Babich against several corporate and individual defendants. The complaint sets forth

claims of fraud, breach of contract and fiduciary duty, restitution, unjust enrichment and emotional distress against George Karsnak, Joan Karsnak and Surftex Company. It also alleges unjust enrichment and breach of fiduciary duty against appellees Columbia Chase Corporation (CCC), Columbia Chase Combustion Division (CCCD), Columbia Fluidized Coal Energy, Inc. (CFCE), Edward Chase, Francis Chase and Sheldon Daly. Following the deposition of Mr. Babich, the Columbia companies collectively moved for summary judgment, arguing that they owed no fiduciary duty to Babich and received no money or benefit from him. The trial court granted the motion on May 22, 1986 and dismissed the complaint as to the corporate appellees. The individual appellees, Edward Chase, Francis Chase and Sheldon Daly, filed preliminary objections challenging the trial court's personal jurisdiction over them. The objections were sustained on June 11, 1986 and the complaint was dismissed as to the Chases and Daly. Nicholas Babich brings these consolidated appeals from the May 22 and June 11 orders.

Appellant's first contention is that the trial court improperly granted summary judgment in the face of factual questions concerning (1) whether the defendant corporations owed him a fiduciary duty as the creditor of an insolvent corporation and (2) whether the defendant corporations were unjustly enriched at his expense. Rule 1035 of the Pennsylvania Rules of Civil Procedure provides that summary judgment may be properly rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Pa.R.C.P. 1035(b).

> The moving party bears the burden of demonstrating that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. In determining whether the moving party has met this burden, the court must examine the record in the light most favorable to

the non-moving party, giving that party the benefit of all reasonable inferences. All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Summary judgment should be granted only in the clearest case, where the right is clear and free from doubt.

*Pennsylvania Gas and Water Co. v. Nenna & Frain, Inc.,* 320 Pa.Super. 291, 298, 467 A.2d 330, 333 (1983) (citations omitted).

In arguing that summary judgment was improper, appellant points solely to the allegations in his amended complaint as creating genuine issues of material fact. This appellant cannot do.

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Pa.R.C.P. 1035(d). *See also Pennsylvania Gas & Water Co., supra,* 320 Pa.Super. at 299, 467 A.2d at 333–334. The policy underlying the foregoing rule was explained by our Supreme Court in *Phaff v. Gerner,* 451 Pa. 146, 303 A.2d 826 (1983):

The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. The ... doctrine, which permits the pleadings themselves to stand in the way of granting an otherwise justified summary judgment, is incompatible with the basic purpose of the rule.

*Id.,* 451 Pa. at 151, 303 A.2d at 829, *quoting,* Federal Rules of Civil Procedure, Rule 56, Notes of Advisory Committee on 1963 Amendment, 28 U.S.C.A. p. 416. As a result, we may rely on appellant's amended complaint for uncontroverted facts but must ignore the pleadings as to controvert-

ed facts when passing on the propriety of summary judgment. *Phaff v. Gerner, supra,* 451 Pa. at 151–152, 303 A.2d at 829.

Viewed in a light most favorable to appellant, the uncontroverted allegations in the amended complaint, as well as appellant's depositions and the various exhibits found in the record, reveal no genuine issue as to the following factual scenario. Appellant Nicholas Babich is the president and owner of Babich and Stotler, Inc.—an industrial contracting firm involved in technological research and development. Over the years, Babich and his firm have endeavored to develop a process by which coal, oil and water can be mixed into a cost-efficient liquid fuel. In the early part of 1980, Mr. Babich became acquainted with George Karsnak through discussions concerning liquid fuel programs. In February of 1980, Karsnak persuaded appellant to visit a prototype coal/oil/water (C.O.W.) facility being operated in Bruin, Pennsylvania.

During his tour of the Bruin facility, Mr. Babich observed a C.O.W. integration process developed by Camille Barthiaume, an engineer with CCC. Babich was "amazed" with the material produced by the integrator, proclaiming the process to be "the greatest thing that anybody encountered" and the "missing link" that had eluded him for years. Karsnak explained that CFCE would be further developing and marketing this C.O.W. mixture and that Surftex Company, which was owned by Karsnak, in turn owned half of the CFCE enterprise. CFCE was incorporated pursuant to a joint venture agreement between Surftex and CCC in which the former was to hold 49% of the stock and the latter was to hold 51%. Under the terms of the agreement, Surftex and CCC were each to pay their own expenses incidental to promoting the joint venture, with CFCE to reimburse these expenses if and when it became profitable. Babich read the joint venture agreement and understood its terms and conditions.

By May of 1980, Karsnak, Babich and two other individuals had formed Black Circle Energy Corporation (BCE) for

the purpose of acquiring and supplying microparticle coal to the proposed CFCE operation. In order to provide BCE with operating capital, Babich injected personal funds and co-signed on loans to BCE. Babich was aware that some of these funds were used to pay for Surftex expenses, and when BCE eventually folded, Babich gave money directly to Surftex. In return for these substantial investments in excess of $100,000, Karsnak pledged 10 shares of stock representing a 50% ownership in Surftex company. Karsnak also promised to make Babich vice president of Surftex. It is clear that under the foregoing arrangements, Babich was to own 50% of Surftex, which in turn held 49% of CFCE. Neither Karsnak nor Babich personally owned stock in the CFCE corporation.

Throughout the period outlined in the amended complaint, the funds invested by Mr. Babich went directly to Surftex or BCE either in the form of advancements to those companies or in the form of cancelling their debts. The amended complaint also alleges that Babich injected additional capital into the prototype plant at Bruin, Pennsylvania. In his deposition, however, Babich conceded that Catch-Forty Systems, as owner of the Bruin facility, is solely answerable for these investments.

Believing himself to be a 50% owner and vice president of the Surftex Company, Babich offered his money and services in a desire to advance Surftex's interests in what he perceived to be a viable C.O.W. venture. Karsnak, however, never delivered the promised stock to Mr. Babich. Things turned sour around December of 1981 when Karsnak received $250,000 from Westinghouse Corporation pursuant to a stock option contract between Westinghouse and Surftex. Babich looked to this $250,000 for reimbursement of his investments, but despite Karsnak's verbal assurances, Babich was never reimbursed. Shortly thereafter, a discrepancy was discovered in the issuance of Surftex stock. Westinghouse lost interest in its option to purchase Surftex Company, and Karsnak lost credibility with CCC. Ultimately, CFCE was dissolved.

■ Based upon this factual background, it is clear that the Columbia companies were entitled to judgment as a matter of law. Appellant was not a shareholder of CCC or CFCE, nor was there any evidence of a relationship between appellant and these companies which would give rise to a fiduciary duty. While appellant contends that CCC owed him a fiduciary duty by virtue of the principles ennunciated in *Brown v. Presbyterian Ministers Fund*, 484 F.2d 998 (3d Cir.1973), his reliance on *Brown* is clearly misplaced. There, the Third Circuit held that an officer of an insolvent corporation, acting with knowledge of the corporation's insolvency, may not appropriate corporate opportunities and assets to the detriment of the corporation's creditors. *Id.* at 1005. The Court stated that "[a]s an officer, director and principle stockholder of an insolvent corporation (as well as being its mind, hands and pockets), Nathan Hoffman was duty bound to act with adequate fidelity to both creditors and stockholders." *Brown, supra* at 1005. Here, although CCC was a principle stockholder of CFCE corporation, there is absolutely nothing to indicate that appellant was a shareholder or creditor of CFCE.

■ Appellant's contention that the Columbia companies were unjustly enriched at his expense is similarly belied by the factual record. Pursuant to the joint venture agreement, Surftex and CCC were to bear their own costs in promoting the CFCE venture. Understanding the terms of this agreement, Babich advanced funds to BCE and Surftex in exchange for Karsnak's promise of Surftex stock. Appellant contributed his money and services in order to advance his own interests in Surftex. If Babich conferred any benefit upon CCC or CFCE, it was incidental to pursuing his own. While it appears that appellant may have meritorious claims against George Karsnak and Surftex Company, the Columbia companies are simply not answerable for appellant's misfortunes. To prevail on his claim of unjust enrichment, appellant must be able to show that CCC or CFCE "wrongly secured or passively received a benefit that would be unconscionable to retain." *Martin v. Little,*

*Brown and Co.*, 304 Pa.Super. 424, 431, 450 A.2d 984, 988 (1982). We find no genuine issue as to a material fact which would allow appellant to make that showing. With respect to CCCD, it is an unincorporated subdivision of CCC, not a separate legal entity capable of being sued. *See In re Sugar Industry Antitrust Litigation,* 579 F.2d 13, 18 (3d Cir.1978); *Western Beef, Inc. v. Compton Investment Co.,* 611 F.2d 587, 591 (5th Cir.1980). Accordingly, CCCD was also entitled to judgment.

Appellant's second and final contention is that the trial court erred in dismissing the complaint as to Edward Chase, Francis Chase and Sheldon Daly for lack of personal jurisdiction. Under the Pennsylvania "Long Arm Statute," 42 Pa.C.S. § 5322(b), Pennsylvania courts may exercise personal jurisdiction to the fullest extent permissible under the due process clause of the United States Constitution. As a result, federal cases are highly instructive to our inquiry.

It is undisputed that the Chases and Daly are not residents of Pennsylvania, nor were they physically present within the Commonwealth at the time process was served. It is also beyond dispute that any contacts these individuals had with Pennsylvania was in their corporate capacity on behalf of CCC. Federal district courts sitting in Pennsylvania have professed that the issue of personal jurisdiction over such individuals is a somewhat confusing area of law which has divided courts in this circuit for at least a decade. *Rittenhouse and Lee v. Dollars and Sense, Inc.,* (E.D.Pa. 1987), (Slip Opinion filed April 15, 1986) [Available on WESTLAW–DCT data base]. The dispute has focused on the due process analysis of *International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny, grappling with the question of whether non-resident officers acting in their corporate capacity should "reasonably anticipate being haled into court" as individual defendants, and whether they "purposefully availed [themselves] of the privilege of conducting activities" within Pennsylvania. *See, World Wide Volkswagen Corp v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d

490 (1980); *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985), *quoting, Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).

Generally speaking, three approaches have developed to the problem presently before us. *See, e.g., Rittenhouse and Lee v. Dollars and Sense, supra.* The approach espoused by appellant is set forth in *Donner v. Tams-Witmark Music Library,* 480 F.Supp. 1229 (E.D.Pa.1979), wherein the court concluded that acts committed by individuals in their corporate capacity may be considered in assessing the constitutionality of jurisdiction over their person. The court reasoned that corporate officers should not be permitted to avoid personal jurisdiction with the corporate shield if they are personally engaged in activity which would subject them to individual liability. The *Donner* theory of jurisdiction is based on the rule of joint and several liability, which holds corporate officers personally liable for corporate torts if they participated in the tortious conduct.

Subsequent district court decisions have criticized the *Donner* theory, suggesting that it is unconstitutional to force corporate officers to defend suits in their individual capacities based upon their corporate activities within the forum. *See Rittenhouse and Lee v. Dollars and Sense, supra.* The weight of authority seems to adopt a bright line approach barring any consideration of an officer's corporate contacts for the purpose of asserting personal jurisdiction over him. *See, e.g., Simkins Corp. v. Gourmet Resources Int'l.,* 601 F.Supp. 1336 (E.D.Pa.1985) and cases cited therein.

The third approach is a flexible due process analysis which would allow personal jurisdiction to be based upon an individual's corporate contacts under *some* circumstances. One such example might be an officer who personally engages in affirmative and egregious activity on behalf of the corporation. *See Moran v. Metropolitan District Council,* 640 F.Supp. 430 (E.D.Pa.1986).

■ We need not determine, however, which of the foregoing paths to follow. Assuming *arguendo* that the *Donner* analysis urged by appellant should be applied, appellant has failed to assert an adequate basis for the exercise of personal jurisdiction. The cornerstone of the *Donner* approach is that "corporate officers are personally liable for alleged tortious conduct of the corporation if they personally took part in the commission of the tort, or if they specifically directed other officers, agents or employees of the corporation to commit the act." *Donner, supra,* 480 F.Supp. at 1233. Appellant has utterly failed to establish such personal involvement on the part of Edward Chase, Francis Chase or Sheldon Daly. We find nothing in the facts of record, nor anything in the amended complaint, to support the exercise of personal jurisdiction over these individuals. "When, as here, a defendant properly raises an objection on the ground of a lack of *in personam* jurisdiction, the plaintiff has the burden of proving that the exercise of jurisdiction is permissible." *Temtex Products, Inc. v. Kramer,* 330 Pa.Super. 183, 190, 479 A.2d 500, 503 (1984). Appellant has failed to meet that burden.

Orders affirmed.