In re **FEDERAL–MOGUL GLOBAL INC., T & N Limited, et al.,**
Debtors.

Bankruptcy No. 01–10578.
Adversary Nos. 13915, 14052, 14053, 14054, 14056, 14057, 14058, 14059, 14060, 14061, 14064.

United States Bankruptcy Court,
D. Delaware.

Sept. 30, 2008.

James E. O'Neill, Laura Davis Jones, Scotta Edelen McFarland, Michael Paul Migliore, Curtis A. Hehn, James E. O'Neill, Michael Seidl, Pachulski Stang Ziehl & Jones LLP, Eric Michael Sutty, Bayard, P.A., John S. Spadaro, Murphy Spadaro & Landon, Maribeth L Minella, Timothy Edward Lengkeek, Young, Conaway, Stargatt & Taylor, Wilmington, DE, Jay R. Bender, Bradley Arant Rose & White, LLP, Birmingham, AL, Julia S. Kreher, Buffalo, NY, Sheldon Samuel Toll, Sheldon S. Toll, PLLC, Southfiled, MI, for Debtors.

Federal–Mogul Asbestos Personal Injury Trust, pro se.

## MEMORANDUM OPINION[1]

JUDITH K. FITZGERALD,
Bankruptcy Judge.

Before the court is an issue which was bifurcated from the plan confirmation process. The Fourth Amended Joint Plan of Reorganization For Debtors and Debtors–In–Possession (As Modified) (the "Plan")[2] of Federal–Mogul Global Inc., T & N Limited, et al.,[3] included two alternatives, the Plan A Settlement and the Plan B Settle-

---

1. This Memorandum Opinion constitutes our findings of fact and conclusions of law.

2. Doc. No. 13360. ("This is the Plan as filed on June 5, 2007, at Doc. Nos. 1260, 12621 and 12622 updated to incorporate the Plan Modifications filed on July 31, 2007 (Doc. No. 582593567), September 26, 2007 (Doc. No. 13374), September 27, 2007 (Doc. No. 13391), October 30, 2007 (Doc. No. 13614), and November 5, 2007 (Doc. No. 13649)").

3. The U.S. Debtors (collectively, the "U.S. Debtors") are Carter Automotive Company, Inc., Federal–Mogul Corporation, Federal–Mogul Dutch Holdings Inc., Federal–Mogul FX, Inc., Federal–Mogul Global Inc., Federal–Mogul Global Properties, Inc., Federal–Mogul Ignition Company, Federal–Mogul Machine Tool, Inc., Federal–Mogul Mystic, Inc., Federal–Mogul Piston Rings, Inc., Federal–Mogul Powertrain, Inc., Federal–Mogul Products, Inc., Federal–Mogul Puerto Rico, Inc., Feder-

ment, for resolving the claims and issues asserted by Cooper Industries, LLC, and Pneumo Abex LLC, and certain of their affiliated entities ("Pneumo Protected Parties").[4] Facing a multitude of objections to the Plan A Settlement and having resolved the objections to the Joint Plan and the Plan B Settlement in a manner sufficient to achieve a consensual confirmation, the parties requested and this court agreed to confirm the Joint Plan and approve the Plan B Settlement, reserving consideration of the Plan A Settlement to a later date.[5] The court now considers the Plan Support-

al–Mogul U.K. Holdings, Inc., Federal–Mogul Venture Corporation, Federal–Mogul World Wide, Inc., Felt Products Manufacturing Co., FM International LLC, Ferodo America, Inc., Gasket Holdings Inc., J.W.J. Holdings, Inc., McCord Sealing, Inc., and T & N Industries Inc.

Those Debtors that are incorporated under the laws of England and Wales or Scotland and are subjects of the Plan (collectively, the "U.K. Debtors") are AE Piston Products Limited, Aeroplane & Motor Aluminum Castings Limited, Ashburton Road Services Limited, Brake Linings Limited, Duron Limited, Edmunds, Walker & Co. Limited, Federal–Mogul Aftermarket U.K. Limited, Federal–Mogul Bradford Limited, Federal–Mogul Bridgewater Limited, Federal–Mogul Camshaft Castings Limited, Federal–Mogul Camshafts Limited, Federal–Mogul Engineering Limited, Federal–Mogul Eurofriction Limited, Federal–Mogul Friction Products Limited, Federal–Mogul Global Growth Limited, Federal–Mogul Ignition (U.K.) Limited, Federal–Mogul Powertrain Systems International Limited, Federal–Mogul Sealing Systems (Cardiff) Limited, Federal–Mogul Sealing Systems (Rochdale) Limited, Federal–Mogul Sealing Systems (Slough) Limited, Federal–Mogul Sealing Systems Limited, Federal–Mogul Shoreham Limited, Federal Mogul Sintered Products Limited, Federal–Mogul Systems Protection Group Limited, Federal–Mogul Technology Limited, Ferodo Caernarfon Limited, Ferodo Limited, Fleetside Investments Limited, F–M U.K. Holding Limited, Friction Materials Limited, Greet Limited, Halls Gaskets Limited, Hepworth & Grandage Limited, J.W. Roberts Limited, Lanoth Limited, Newalls Insulation Company Limited, TAF International Limited, T & N Holdings Limited, T & N International Limited, T & N Investments Limited, T & N Limited, T & N Materials Research Limited, T & N Piston Products Group Limited, T & N Properties Limited, T & N Shelf Eighteen Limited, T & N Shelf Nineteen Limited, T & N Shelf One Limited, T & N Shelf Seven Limited, T & N Shelf Three Limited, T & N Shelf Twenty Limited, T & N Shelf Twenty–One Limited, T & N Shelf Twenty–Six Limited, TBA Belting Limited, TBA Industrial Products Limited, Telford Technology Supplies Limited, The Washington Chemical Company Limited, Turner & Newall Limited, Turner Brothers Asbestos Company Limited, and Wellworthy Limited. Certain additional U.K. affiliates of the U.S. Debtors and U.K. Debtors have commenced chapter 11 cases but are not subjects of the Plan.

4. The Pneumo Protected Parties consist of the following entities: Pneumo Abex, LLC, successor to Pneumo Abex Corporation; PCT the corporate parent of Pneumo Abex LLC; Cooper Industries, LLC, successor to Cooper Industries, Inc.; Cooper Industries, Limited., the ultimate corporate parent of Cooper Industries, LLC; the related parties listed on Exhibit A1.1.100 to the Addendum; Certain Future Affiliates of these parties listed above; Certain representatives of the parties listed above, in their capacities as such; and Settling Pneumo Asbestos Insurers, if any. The defined term "Pneumo Protected Parties" excludes PepsiAmericas, any predecessor in interest of PepsiAmericas or, as to any of the foregoing, any of their respective Affiliates and Former Affiliates and any Future Affiliate (other than any predecessor in interest (whether through the acquisition of stock, assets, lines of business or otherwise) of PepsiAmericas or any of their respective Affiliates and Former Affiliates, to the extent such predecessor is also a predecessor of Pneumo Abex or a Former Affiliate of such predecessor or Pneumo Abex). § 1.1.100 of Addendum, Doc. No. 13915, Exh. B.

5. Debtors' request to bifurcate the process was driven by a December 31, 2007, deadline to take the Joint Plan effective or lose Debtors' exit financing facility, a deadline that threatened to derail their Joint Plan and cost them millions of dollars.

ers'[6] request to approve the Plan A Settlement and the numerous objections to the Plan A Settlement raised by certain Objecting Insurers,[7] PepsiAmericas, Inc., Ford Motor Company, DaimlerChysler LLC,[8] and Volkswagon of America, Inc.[9] (collectively, "Plan A Settlement Objectors").

For the reasons which follow, the motion to approve the Plan A Settlement will be denied.

6. The "Plan Supporters" are collectively the Debtors and Debtors–In–Possession in the above-captioned chapter 11 case (the "Debtors"), the Official Committee of Asbestos Claimants (the "ACC"), the Legal Representative for Future Asbestos Claimants (the "FCR"), Cooper Industries, LLC ("Cooper") and Pneumo Abex LLC ("Pneumo Abex").

7. The "Objecting Insurers" are: Ace Property & Casualty Insurance Company; Century Indemnity Company, as successor to CCI Insurance Company (successor to Insurance Company of North America) and CIGNA Specialty Insurance Company f/k/a California Union Insurance Company; Central National Insurance Company of Omaha (for certain policies issue through Cravens Dargan & Company, Pacific Coast, as Managing General Agent); Pacific Employers Insurance Company; Insurance Company of North America; St. Paul Mercury Insurance Company and United States Fire Insurance Company (collectively, "ACE"); AIG Casualty Company; AIU Insurance Company; American Home Assurance Company; Granite State Insurance Company; Insurance Company of the State of Pennsylvania; Lexington Insurance Company; National Union Fire Insurance Company of Pittsburgh, Pa; New Hampshire Insurance Company (collectively, "AIG Member Companies"); Allianz Global Corporate & Specialty AG (as successor-by-partial-merger to Allianz Versicherungs AG as to Policy No. H 0 001 456); Allianz Global Risks U.S. Insurance Company (f/k/a Allianz Underwriters, Inc.) (Collectively, "Allianz"); Columbia Casualty Company, Continental Casualty Company, The Continental Insurance Company, Both In Its Individual Capacity and As Successor To Certain Interests Of Harbor Insurance Company (collectively, "CNA Entities"); Fireman's Fund Insurance Company and National Surety Company (collectively, "Fireman's Fund"); Globe Indemnity Company ("Globe"); Hartford Accident and Indemnity Company, First State Insurance Company, and New England Insurance Company (collectively, "Hartford"); Certain Underwriters at Lloyds, London and Certain London Market Companies (collectively, "London"); OneBeacon America Insurance Company ("OneBeacon"); Royal Indemnity Company ("Royal"); Seaton Insurance Company ("Seaton"); Stonewall Insurance Company ("Stonewall"); TIG Insurance Company (solely as successor to International Insurance Company) ("TIG"); The Travelers Indemnity Company and certain affiliates and Travelers Casualty and Surety Company f/k/a The Aetna Casualty and Surety Company (collectively, "Travelers"); Employers Insurance Company of Wausau ("Wausau").

8. Effective July 30, 2007, Chrysler LLC succeeded to DaimlerChrysler Corporation's interest in this proceeding. For the sake of consistency with prior filings, the parties continue to use the DaimlerChrysler name. The court will do likewise.

9. Volkswagen of America, Inc. is now named Volkswagen Group of America, Inc. For the sake of consistency with prior filings, the parties continue to use the Volkswagen of America name. The court will do likewise.

10. The Plan sets forth the alternate treatment of Cooper and Pneumo Abex's claims, i.e., the Pneumo Parties Claims, in Class Q. For instance, in Class 5Q:

The Class 5Q Pneumo Parties Claims shall be treated pursuant to one of the following alternatives: (i) subject to the condition

## BACKGROUND

The Debtors, the ACC and the FCR, on the one hand, and Cooper and Pneumo Abex, on the other, negotiated a comprehensive settlement of Cooper's and Pneumo Abex's claims and plan objections. The settlement consists of two alternate arrangements for treatment of the claims of Cooper and Pneumo Abex:[10] (1) the Plan A Settlement which requires Cooper

and Pneumo Abex to make contributions to the Pneumo Abex Subfund in the Asbestos Personal Injury Creditors Trust ("Trust") totaling $756 million, and extends a third party injunction pursuant to 11 U.S.C. § 524(g)(4)(A)(ii) to Cooper and Pneumo Abex and certain affiliates; and, alternatively, (2) the Plan B Settlement, which resolves Cooper's and Pneumo Abex's claims in return for a $140 million payment to Cooper and Pneumo Abex from the Trust. Plan Supporters prefer the Plan A Settlement but proposed the Plan B Settlement as the default, or fallback, settlement in the event that the court could not approve the Plan A Settlement.[11] Debtors' former General Counsel, John Gasparovic, testified that during "the negotiations of Plan A there were some questions about the propriety of the channeling injunction that Cooper was asking

for."[12] Accordingly, Debtors insisted that any plan also include a "fallback" (Plan B Settlement) that did not provide for a § 524(g) injunction for Pneumo Abex and Cooper.[13]

The Confirmation Hearing to consider confirmation of the Plan, including approval of the Plan A and Plan B Settlements, was held over six days of trial plus a day and a half of oral argument, at which all objections to confirmation were considered.[14] At the end of the Confirmation Hearing, the court agreed to consider approval of the Plan and Plan B Settlement before consideration of the Plan A Settlement.[15] Thereafter, after devoting a considerable amount of time and effort, the Debtors, Plan Proponents,[16] Objecting Insurers, and other interested parties were able to resolve all remaining objections to confirmation[17] except those related to the

precedent that the Plan A Date and the Date of Finality occur, the Class 5Q Pneumo Parties Claims shall be treated as provided in the Plan A Settlement set forth in the Addendum as implemented by Section 8.23 of the Plan, or (ii) if Articles II and III of the Plan B Settlement Agreement become effective pursuant to Section 5.01 of the Plan B Settlement Agreement prior to the Date of Finality, the Class 5Q Pneumo Parties Claims shall be treated as provided in the Plan B Settlement Agreement, as implemented by Section 8.22 of the Plan. Plan, Section 3.5.13(b).

**11.** *See* Plan Supporters' Consolidated Joint Reply Brief in Support of Modifications to the Addendum of Additional Provisions Incorporated into Joint Plan of Reorganization (Pneumo Abex "Plan A" Settlement) and Approval of the Plan A Settlement, Doc. No. 14083, at 5.

**12.** July 10, 2007 Hearing Transcript, Doc. No. 13070, at 62.

**13.** *Id.*

**14.** Evidence and testimony were presented at the Confirmation Hearing on June 18–21, 2007 and July 9–10, 2007, and closing arguments were heard by the court on October 1–

2, 2007. Confirmation Hearing Transcripts, Doc. Nos. 12842, 12879, 12880, 13000, 13069, 13079, 13473, and 13480.

**15.** *See* footnote 5, *supra.*

**16.** The Plan Proponents are as follows: Debtors, the Official Committee of Unsecured Creditors, the Official Committee of Asbestos Claimants, the Legal Representatives for Future Asbestos Claims, the Official Committee of Equity Security Holders, and JPMorgan Chase Bank, N.A., as Administrative Agent under the Bank Credit Agreement.

**17.** Order of October 11, 2007, Approving Stipulation By and Among (I) Plan Proponents, (II) Cooper Parties, (III) PCT/Pneumo Parties, (IV) PepsiAmericas, Inc., and (V) Stipulating Pneumo Abex Insurers and Clarifying Effect of Plan B Settlement Agreement and Withdrawal of Objections Thereto, Doc. No. 582593568; Order of November 8, 2007, Authorizing and Approving Settlement with Stonewall Insurance Company, Doc. No. 13662; Order of November 8, 2007, Authorizing and Approving Settlement with Seaton Insurance Company, Doc. No. 13663; Order of November 8, 2007, Authorizing and Approving Settlement with OneBeacon Ameri-

Assignment and Preemption Issue.[18]

On November 8, 2007, this court entered an order (the "Confirmation Order")[19] confirming the Fourth Amended Joint Plan of Reorganization For Debtors and Debtors–In–Possession (As Modified) (the "Plan")[20] of Federal–Mogul Global Inc., T & N Lim-

ited, et al., ("Debtors") and also entered Findings of Fact and Conclusions of Law Regarding Confirmation of the Fourth Amended Joint Plan of Reorganization for Debtors and Debtors–In–Possession (As Modified)[21] (the "Findings of Fact and Conclusions of Law").[22] On November 13,

can Insurance Company, Doc. No. 13664; Order of November 8, 2007, Authorizing and Approving Settlement with TIG Insurance Company, Doc. No. 13665; Order of November 8, 2007, Authorizing and Approving Settlement with ACE USA Companies, Doc. No. 13666; Order of November 8, 2007, Granting Motion for An Order Approving Proposed Settlement Agreement By, Between and Among Federal–Mogul Corporation, Federal–Mogul Products Inc., Cooper Industries, LLC, Magnetek, Inc., and Travelers, Doc. No. 13667; Order of November 8, 2007, Approving Stipulation By and Among the Debtors, the Official Committee of Asbestos Claimants, the Legal Representative for Future Asbestos Claimants, and the CNA Entities, Doc. No. 13668; Order of November 8, 2007, (I) Approving Compromise and Settlement with Certain Insurers Pursuant to Asbestos Bodily Injury Coverage in Place Agreement and Related Commutation Agreement, (II) Authorizing Sale of Estate Property Free and Clear of Liens and Other Interests, And (III) Partially Allowing Travelers Claim No. 10163 as Class 1 E Claim, Doc. No. 13669.

18. On October 17, 2007, the Plan Proponents and the certain Objecting Insurers filed a Joint Motion Seeking Determination of Asbestos Insurance Assignment and Preemption Issues Pursuant to the Plan, Doc. No. 13499, and seeking court approval of the Stipulation to Preserve Appeals on the Asbestos Insurance Assignment and Preemption Issue, Doc. No. 13499, Exhibit A. This stipulation was entered into by and among the Plan Proponents and certain Objecting Insurers. A separate stipulation was entered into by and among the Plan Proponents and Certain Underwriters at Lloyd's, London and Certain London Market Companies (collectively, "LMI"), ("LMI" Stipulation).Doc. No. 582593612. The LMI Stipulation was subsequently added to the October 17, 2007, Joint Motion. Doc. No. 13499. The certain Objecting Insurers' stipulation and the LMI Stipulation shall be collectively referred to herein as the "Stipulations." A hearing was held on

October 25, 2007, and the court entered the Stipulation Orders on November 8, 2007. Doc. Nos. 13670 and 13671.

19. Doc. No. 13674.

20. Doc. No. 13360. ("This is the Plan as filed on June 5, 2007, at Doc. Nos. 1260, 12621 and 12622 updated to incorporate the Plan Modifications filed on July 31, 2007 (Doc. No. 582593567), September 26, 2007 (Doc. No. 13374), September 27, 2007 (Doc. No. 13391), October 30, 2007 (Doc. No. 13614), and November 5, 2007 (Doc. No. 13649)").

21. Doc. No. 13672.

22. Consistent with the terms of the Order and Stipulation to Preserve Appeals on the Asbestos Insurance Assignment and Preemption Issue, Doc. No. 13671, and the Order and Stipulation Regarding Remaining London Market Objections to the Plan, Doc. No. 13670, (collectively, the "Stipulation Orders"), the Confirmation Order did not constitute or contain a ruling on the objections of the Objecting Insurers to the confirmation of the Plan on the ground that assignment of the Insurance Rights to the Trust is not permitted, as a matter of law, under the Bankruptcy Code ("Assignment and Preemption Issue"). The Stipulation Orders provided that this court would address the Assignment and Preemption Issue separately from the confirmation of the Plan. The Order and Stipulation Regarding Remaining London Market Objections to the Plan, Doc. No. 13670, at 4, states: "... section 7.1 of the Plan sets forth the conditions to confirmation of the Plan", and there is no condition to confirmation stated in the Plan that the Bankruptcy Court or the District Court must approve the assignment of Insurance Rights or determine that the Bankruptcy Code, as a matter of law, preempts state law and contractual provisions prohibiting assignment absent the consent of the insurers. Hence, Plan confirmation does not depend on

2007, the United States District Court for the District of Delaware entered an order (the "Affirmance Order")[23] affirming the Confirmation Order and adopting the Findings of Fact and Conclusions of Law.

On March 19, 2008, this court overruled the objections of the Objecting Insurers and of Certain Underwriters at Lloyds, London and London Market, holding that the assignment of rights in certain insurance policies to the asbestos trust, as provided in part by Section 4.3 of the Fourth Amended Joint Plan of Reorganization For Debtors and Debtors–In–Possession (As Modified), Doc. No. 13360, is valid and enforceable pursuant to §§ 524(g), 541(c)(1), 1123(a)(5)(B) and § 1129(a)(1) of

the Bankruptcy Code notwithstanding anti-assignment provisions in or incorporated in the policies and applicable state law.[24] This order is on appeal to the District Court.

## PLAN A SETTLEMENT ISSUES

Following the confirmation hearing, Plan Objectors made a joint submission which organized their various post-trial briefs (including joinders and other supplemental pleadings) according to the principal issues to which each post-trial brief is directed.[25] While a number of these issues addressed the Plan and the Plan B Settlement, the following issues dealt directly with the Plan A Settlement: (1) the Plan A Settlement fails to comply with 11 U.S.C.

the entry of an Order determining the Preemption Issues (the "Preemption Order") in favor of the Plan Proponents. Thus, regardless of who prevails on the Preemption Issues, the Plan may be confirmed. Hence, the Bankruptcy Court's consideration of the Preemption Issues is a separate determination from the Court's consideration of whether to confirm the Plan."

**23.** Doc. No. 13698. The Affirmance Order was signed on November 13, 2007, entered on the Bankruptcy Court docket on November 14, 2007, and entered on the District Court docket on November 16, 2007 (Case No. 07–00198(JHR), D.I. 3). The Plan became effective on December 27, 2007. *See* Notice of (A) Entry of Order Confirming Fourth Amended Joint Plan of Reorganization for Debtors and Debtors–In–Possession (As Modified); (B) Effective Date of the Plan; (C) Substantial Consummation of the Plan; And (D) Bar Dates for Certain Administrative Claims and Professional Claims, Doc. No. 13940.

**24.** Memorandum Opinion Regarding Assignment and Preemption Issue and corresponding Order, entered March 19, 2008. Doc. No. 14237.

**25.** Brief of Certain Insurers in Opposition to Confirmation of "Plan A" Alternative Version of Fourth Amended Joint Plan of Reorganization (As Amended) on the Ground that It Fails to Comply with Section 524(g) of the Bank-

ruptcy Code, Doc. No. 13182, Tab 1; Joinder of DaimlerChrysler Corporation and Volkswagon of America, Inc. in Brief of Certain Insurers in Opposition to Confirmation of "Plan A" Alternative Version of Fourth Amended Joint Plan of Reorganization (As Amended) on the Ground that it Fails to Comply with Section 524(g) of the Bankruptcy Code, Doc. No. 13182, Tab 1(a); Mt. McKinley Insurance Company's Joinder to the Brief of Certain Insurers in Opposition to Confirmation of "Plan A" Alternative Version of Fourth Amended Joint Plan of Reorganization (As Amended) on the Ground that it Fails to Comply with Section 524(g) of the Bankruptcy Code, Doc. No. 13182, Tab 1(b); Joinder and Supplemental Statement of Certain AIG Member Companies to Briefs Opposing Plan Confirmation, Doc. No. 13182, Tab 1(c); Joinder of OneBeacon America Insurance Company, Seaton Insurance Company, and Stonewall Insurance Company in "Brief of Certain Insurers in Opposition to Confirmation of 'Plan A' Alternative Version of Fourth Amended Joint Plan of Reorganization (As Amended) on the Ground that It Fails To Comply with Section 524(g) of the Bankruptcy Code", Doc. No. 13182, Tab 1(d); Joinder of PepsiAmericas, Inc. in "Brief of Certain Insurers in Opposition to Confirmation of 'Plan A' Alternative Version of Fourth Amended Joint Plan of Reorganization (As Amended) on the Ground that It Fails To Comply with Section 524(g) of the Bankruptcy Code", Doc. No. 13182, Tab 1(e).

§ 524(g), (2) the Plan A Settlement exceeds the limits of the Bankruptcy Court's subject matter jurisdiction, and fails to satisfy the Bankruptcy Code's good-faith requirements,[26] and (3) Certain Insurers have standing to object to confirmation of the Plan A Settlement and the Plan A

Settlement is not insurance neutral.[27] Plan Supporters also addressed these issues in their Post–Trial Briefs regarding the Plan A Settlement.[28] In December of 2007, the Plan Supporters submitted a Modified Plan A Settlement[29] and filed a Brief in Support of the Modifications and Approval of the Plan A Settlement.[30] The

**26.** The Court Lacks Subject Matter Jurisdiction to Confirm Plan A and Plan A Was Not Proposed in Good Faith, Doc. No. 13182, Tab 2; Hartford's Separate Submission with Respect to Issues of Subject Matter Jurisdiction, Doc. No. 13182, Tab 2(a); Mt. McKinley Insurance Company's Joinder to Certain Insurers' Post Trial Brief Regarding Jurisdiction and "Good Faith", Doc. No. 13182, Tab 2(b); Joinder and Supplemental Statement of Certain AIG Member Companies to Briefs Opposing Plan Confirmation, Doc. No. 13182, Tab 2(c).

**27.** Certain Insurers Have Standing to Object to Confirmation of Plan A and Plan A Is Not Insurance Neutral, Doc. No. 13182, Tab 3; Mt. McKinley Insurance Company's Post–Trial Brief on Standing in Opposition to Confirmation of Fourth Amended Joint Plan of Reorganization (As Modified), Doc. No. 13182, Tab 3(a); Hartford's Joinder in Certain Insurers' Brief on Standing, Doc. No. 13182, Tab 3(b); Joinder of OneBeacon, Seaton, and Stonewall in Brief Addressing Insurers' Standing to Object to Confirmation, Doc. No. 13182, Tab 3(c); Joinder and Supplemental Statement of Certain AIG Member Companies to Briefs Opposing Plan Confirmation, Doc. No. 13182, Tab 3(c).

**28.** Joint Post–Confirmation Hearing Memorandum of Certain Plan Proponents, Cooper Industries, LLC and Pneumo Abex LLC in Support of the "Plan A" Addendum to the Fourth Amended Joint Plan of Reorganization, Doc. No. 582593565; Joint Post–Confirmation Hearing Reply Memorandum of Certain Plan Proponents, Cooper Industries, LLC and Pneumo Abex LLC in Support of the "Plan A" Addendum to the Fourth Amended Joint Plan of Reorganization, Doc. No. 13250.

**29.** A chart detailing the cumulative changes to the Modified Plan A Settlement Documents as set forth in the modifications filed on December 13, 2007, Doc. No. 13850, and December 15, 2007, Doc. No. 13875, is set out in

Exhibit A, Doc. No. 13915. The Plan Supporters have also attached cumulative blacklined copies of the following (collectively, the "Modified Plan A Settlement Documents"), as Exhibits B through I:(1) Addendum of Additional Provisions Incorporated into Joint Plan of Reorganization (Pneumo Abex "Plan A" Settlement) ("Addendum"); (2) Pneumo Abex Addendum to U.S. Asbestos Personal Injury Trust Agreement; (3) Amended and Restated Limited Liability Company Agreement of Pneumo Abex LLC; (4) Promissory Note; (5) Cooper Industries, Ltd. Guaranty of $500,000,000 Note; (6) Unwind Agreement; (7) Findings of Fact and Conclusions of Law Regarding Approval of the Addendum of Additional Provisions Incorporated into Joint Plan of Reorganization (Pneumo Abex "Plan A" Settlement); and (8) Order Approving Addendum of Additional Provisions Incorporated into Joint Plan of Reorganization (Pneumo Abex "Plan A" Settlement). These exhibits are marked to show all changes from the versions of such documents filed on November 20, 2006, and amended on June 4, 2007, Doc. Nos. 12620, 12621, 12622, or, in the case of the Plan A, versions filed with the Court on September 26, 2007, Doc. Nos. 13392, 13393.

**30.** Plan Supporters' Consolidated Joint Brief in Support of Modifications to the Addendum of Additional Provisions Incorporated into Joint Plan of Reorganization (Pneumo Abex "Plan A" Settlement) and Approval of the Plan A Settlement, Doc. No. 13915; Statement in Support by Certain Mesothelioma Claimants to the Modifications to the Addendum of Additional Provisions Incorporated into the Joint Plan of Reorganization (Pneumo Abex "Plan A" Settlement) and Approval of Plan A Settlement, Doc. No. 14049; Plan Supporters' Consolidated Joint Reply Brief in Support of Modifications to the Addendum of Additional Provisions Incorporated into Joint Plan of Reorganization (Pneumo Abex "Plan A" Settlement) and Approval of the Plan A Settlement, Doc. No. 14083.

modifications to the Plan A Settlement were intended to eliminate issues (2) and (3) above. To address the jurisdiction issues related to the insurance assignment, Plan Supporters removed the Pneumo Insurance Agreement from the Plan A Settlement. To address the standing and insurance neutrality issues, Plan Supporters removed the Trust's contingent right to future proceeds from Pneumo Asbestos Insurance Policies (or related statements), deleted the Pneumo Abex Insurance Equity Injunction, and eliminated the concept of designating insurers as Settling Pneumo Asbestos Insurers. Plan Supporters assert that now that the insurance-related provisions have been removed, the Insurers and PepsiAmericas lack standing to contest approval of the Plan A Settlement.

Plan Supporters assert that the only remaining issues relate to whether the Pneumo Protected Party Injunction included in the Plan A Settlement complies with § 524(g) and whether Cooper and Pneumo Abex qualify for the protection of a third party injunction under 11 U.S.C. § 524(g)(4)(A)(ii). The Plan Supporters contend that these § 524(g) issues should not cause the court to reject the proposed Plan A Settlement.

In their responses to the Plan Supporters' Brief in Support of the Modifications and Approval of the Plan A Settlement, the Plan A Settlement Objectors contested the modifications on a number of procedural grounds, disputed the Plan Supporters' contentions that modifications had resolved the jurisdiction and insurance neutrality issues, asserted that they still had standing, requested discovery and additional hearings regarding the Plan A Modifications, and once again raised the various § 524(g) issues associated with the Pneumo Protected Party Injunction.[31]

For the reasons discussed below, having now reviewed the extensive record and numerous briefs and arguments of the parties, this court finds that the Plan A Settlement, modified or unmodified,[32] fails to comply with 11 U.S.C. § 524(g). As such,

---

**31.** Ford Motor Company's Continuing Objection to Plan A Settlement, Doc. No. 14052; Brief of DaimlerChrysler and Volkswagen of America in Response to the Plan Supporters' Consolidated Joint Brief in Support of Modifications to the Addendum of Additional Provisions Incorporated into Joint Plan of Reorganization, Doc. No. 14053; Response of Fireman's Fund Insurance Company and National Surety Company in Opposition to the Plan Supporters' Request for Approval of "Plan A", Doc. No. 14054; Mt. McKinley Insurance Company's Objection and Response to Plan Supporters' Consolidated Joint Brief in Support of Modifications to the Addendum of Additional Provisions Incorporated into Joint Plan of Reorganization (Pneumo Abex "Plan A" Settlement) and Approval of the Plan A Settlement, Doc. No 14056; Federal Insurance Company's (I) Joinder in Briefs of Certain Insurers and Columbia Casualty Company, Continental Casualty Company and the Continental Insurance Company in Response to Modifications to the Addendum of Additional ("Plan A") Provisions Incorporated into Joint Plan of Reorga-

nization and (II) Further Opposition to Proposed Modification to Joint Plan, Doc. No. 14057; Brief of Certain Insurers in Response to Modifications to the Addendum of Additional Provisions Incorporated into Joint Plan of Reorganization ("Plan A"), Doc. No. 14058; PepsiAmericas' Response to the December 21, 2007 Brief of the Plan Proponents Regarding New Plan A, Doc. No. 14059; Columbia Casualty Company, Continental Casualty Company, and the Continental Insurance Company's Objection and Joinder in Objections to Approval of Modifications to the Addendum of Additional Provisions Incorporated into Joint Plan of Reorganization ("Plan A"), Doc. No. 14060; Joinder of Fireman's Fund Insurance Company and National Surety Company to Certain Briefs in Opposition to "Plan A", Doc. No. 14061; PepsiAmericas, Inc.' Joinder in Certain Objections to "New Plan A", Doc. No. 14064.

**32.** Plan Supporters acknowledge that the proposed modifications to the Plan A Settlement do not address the § 524(g) issues. Doc. No. 13915, at 6.

it is unnecessary for the court to address the procedural issues, discovery request, and other contentions raised by the Plan A Settlement Objectors relating to the modifications to the Plan A Settlement submitted by the Plan Supporters.

## DISCUSSION

### I. STANDING OF PEPSIAMERICAS AND OBJECTING INSURERS

The Plan Supporters argue that the Objecting Insurers and PepsiAmericas have no standing to oppose the Plan A Settlement because it is sufficiently protective of the rights of Objecting Insurers and PepsiAmericas. The Plan Supporters believe that the Plan A Settlement as originally filed was sufficient but amended the Plan A Settlement to address the objections of the Objecting Insurers and PepsiAmericas. PepsiAmericas and the Objecting Insurers provided a number of arguments why they have standing, even after the Plan Supporters amended the Plan A Settlement. However, as it pertains to the § 524(g) injunction, the standing of PepsiAmericas and the Objecting Insurers need not detain us. As co-defendants with Pneumo Abex whose claims against Pneumo Abex will be channeled to the Trust, the standing of DaimlerChrysler Corporation, Volkswagen of America, and Ford Motor Company remains uncontested and their outstanding objections must be resolved.[33] The automakers have objected to the approval of the Plan A Settlement on the grounds that it does not comply with § 524(g) and that the Pneumo Protected Parties (Cooper, Pneumo Abex, and certain affiliates) do not qualify for the protection of a third party injunction under 11 U.S.C. § 524(g)(4)(A)(ii).[34] The automakers also joined the briefs filed by the Objecting Insurers' which address these same § 524(g) objections.[35]

Regardless of whether PepsiAmericas and the Objecting Insurers have standing, the court must fully consider the substantive issues raised by the automakers with respect to the Plan A Settlement. Thus, we undertake the analysis of the issues raised by the automakers that led the court to conclude that the Plan A Settlement cannot be approved and forego the temptation to delve into the complex thicket of matters of first impression raised by the Objecting Insurers and PepsiAmericas, which are not essential to this resolution.

### II. THIRD PARTY INJUNCTION UNDER SECTION 524(g)

Under the Plan A Settlement, the Pneumo Protected Parties (Cooper, Pneumo

---

33. *See e.g.* Ford Motor Company Has Standing to Object to Confirmation of Plan A, Doc. No. 13182, Tab 6.

34. *See* Ford Motor Company's Continuing Objection to Plan A Settlement, Doc. No. 14052; Brief of DaimlerChrysler and Volkswagen of America in Response to the Plan Supporters' Consolidated Joint Brief in Support of Modifications to the Addendum of Additional Provisions Incorporated Into Joint Plan of Reorganization, Doc. No. 14053 (DaimlerChrysler and Volkswagen of America also used this brief to adopt the arguments set forth in the Brief of Certain Insurers in Response to Modifications to the Addendum of Additional Provisions Incorporated Into Joint Plan of Reorganization ("Plan A"), Doc. No. 14058); Brief of Certain Insurers in Opposition to Confirmation of "Plan A" Alternative Version of Fourth Amended Joint Plan of Reorganization (As Amended) on the Ground That It Fails to Comply with Section 524(g) of the Bankruptcy Code, Doc. No. 13182, Tab 1 (Ford Motor Company filed this post-trial brief along with a number of Objecting Insurers); Joinder of DaimlerChrysler Corporation and Volkswagen of America, Inc. in Brief of Certain In Opposition to Confirmation of "Plan A" Alternative Version of Fourth Amended Joint Plan of Reorganization (As Amended) on the Ground That It Fails to Comply with Section 524(g) of the Bankruptcy Code, Doc. No. 13182, Tab 1(a).

35. *Id.*

Abex, and certain affiliates) would receive, as consideration for substantial monetary contributions to the Pneumo Abex Subfund of the Trust and withdrawing their claims against the Debtors, a § 524(g) injunction ("Pneumo Protected Party Injunction")[36] barring the Pneumo Asbestos Claims[37] from being asserted against them. The Pneumo Asbestos Claims would instead be channeled to the Pneumo Abex Subfund of the Trust.[38] The Pneumo Abex Subfund would be funded solely from the assets of the Pneumo Protected Parties.[39] Cooper would make a contribution of $746 million, comprised of $246 million in cash and a $500 million promissory note payable over 25 years, and release certain other claims against the Debtors and certain non-debtors.[40] PCT International Holdings Inc. (the parent of Pneumo Abex) would contribute $10 million in cash and all of its 100% equity interest in Pneumo Abex.[41] The Plan A Settlement Objectors argue that the Plan A Settlement cannot be confirmed because the third party injunction in favor of Pneumo Abex and Cooper provided for in the Plan A Settlement is not permitted under § 524(g) of the Bankruptcy Code.

**36.** § 2.3.2 of Addendum, Doc. No. 13915, Exh. B.

**37.** *"Pneumo Asbestos Claims* means any and all Claims and Plan A Demands (including without any limitation any Claim or Plan A Demand for compensatory damages; loss of consortium; medical monitoring; survivorship; wrongful death; proximate, consequential, general, special or punitive damages; reimbursement; indemnity; warranty; contribution or subrogation), whenever and however asserted, whether now existing or hereafter arising, whether in the nature of or sounding in tort, contract, warranty, conspiracy or any other theory of law, equity or admiralty whatsoever, for, attributable to, based on, arising out of or under or derivative of, directly or indirectly, physical, emotional or other personal injuries (including without limitation death resulting therefrom) caused, or allegedly caused, in whole or in part, directly or indirectly, by the presence of or exposure to asbestos or asbestos-containing products for which F–M Products is or could be liable and arising or allegedly arising, directly or indirectly, from acts, omissions, business or operations of one or more of the Debtors or the predecessors of any of the Debtors, or any other Entity for whose acts, omissions, business or operations any of the Debtors have liability (to the extent of such Debtor's or Debtors' liability for such acts, omissions, business or operations), including without limitation those (A) for which Wagner is or could be liable, directly or indirectly, under or as a result of 1994 APA, (B) for which Cooper is or could be Liable under the Mutual Guaranty, (C) against any Pneumo Protected Party to the extent arising, directly or indirectly, from acts, omissions, business, or operations of Wagner (including without limitation its successors in interest) pertaining to or in connection with the operation of any business, activity, and operations of Wagner while Wagner (or its successors in interest) was a direct or indirect subsidiary of Cooper, or (D) against any Pneumo Protected Party to the extent such Claims or Plan A Demands would constitute 'Assumed Liabilities' within the meaning of the 1994 APA or to the extent arising, directly or indirectly, from acts, omissions, business, or operations of Pneumo Abex (including without limitation its predecessors in interest) pertaining to or in connection with the operation of the Business but excluding Retained Liabilities (as defined in the 1994 APA) for so long as they remain Retained Liabilities; *provided, however,* that Pneumo Asbestos Claims shall not include any Claims brought by a past or present employee under an applicable workers' compensation statute or Wagner Asbestos Claims." § 1.1.93 of Addendum, Doc. No. 13915, Exh. B.

**38.** § 2.2.2(b) of Addendum, Doc. No. 13915, Exh. B.

**39.** § 2.2.1(a) of Addendum, Doc. No. 13915, Exh. B.

**40.** § 2.2.1 (a) of Addendum, Doc. No. 13915, Exh. B.

**41.** § 2.2.1(a) of Addendum, Doc. No. 13915, Exh. B.

## A. FACTUAL BACKGROUND

A review of the applicable corporate and transactional history is necessary to understand the relationship between the Pnuemo Protected Parties (including Cooper and Pneumo Abex), the Debtors, and the Pneumo Asbestos Claims.

The American Brake Shoe & Foundry Company was organized in New Jersey in 1902 and reincorporated as a Delaware corporation in 1916.[42] American Brakeblok Corporation, a subsidiary of the American Brake Shoe began manufacturing asbestos-containing products in the 1920s.[43] In 1937, American Brakeblok Corporation merged into its parent, American Brake & Shoe Foundry Company, forming what became known as the Friction Products Division, which contained the Abex Brake Business.[44] The American Brake Shoe & Foundry Company changed its name to American Brake Shoe Company in 1943, and then to Abex Corporation in 1966.[45]

In 1968, Illinois Central Industries, Inc. ("IC Industries," a predecessor to Whitman Corporation and ultimately PepsiAmericas)[46] acquired Abex Corporation, including its Abex Brake Business, through a merger of IC Industries' subsidiary Illinois Abex Corporation into the Abex Corporation. Thus, the Abex Corporation survived as a wholly-owned subsidiary of IC Industries. In 1984, Pneumo Corporation was acquired by IC Industries as a wholly-owned subsidiary under a similar arrangement as Abex Corporation. In 1985, Pneumo Corporation was renamed Pneumo Abex Corporation.

The "Pneumo Asbestos Claims" as defined in The Plan A Settlement stem from alleged exposure to asbestos containing friction products manufactured by the Abex Brake Business of the Friction Products Division of the Abex Corporation. The Abex Corporation and its predecessors manufactured and distributed various brake products, including asbestos-containing automotive brake products.[47] The Abex Corporation ceased selling asbestos-containing products in 1987.[48]

In 1988, IC Industries, Inc., sold the capital stock of Abex Corporation, Pneumo Abex Corporation, and other subsidiaries to PA Holdings Corporation, an affiliate of The Henley Group. In June and August of 1990, the assets and liabilities of Pneumo Abex Corporation and Abex Corporation were consolidated into their parent, PA Holdings Corporation. Both Abex Corporation and Pneumo Abex Corporation ceased to exist subsequent to this 1990 "roll-up." In November of 1990, PA Hold-

---

42. Revised Declaration of Steven L. Fasman, Doc. No. 12931, at 17. The Fasman Declaration includes, among other exhibits, nine graphic demonstratives depicting the historical relationships and corporate transactions among the Pneumo Protected Parties and with the Debtors. *See* Declaration of Steven L. Fasman, Doc. No. 12606 for exhibits.

43. *Id.* at 18.

44. Fasman Deposition, Doc. No. 12877, Exh. 3, at 52–53; Fasman Declaration, Doc. No. 12931, at 18; Lambert Amended Report at 3.1.2 (Counsel to Hartford Companies submitted the Lambert Amended Report to the court during the July 10, 2007 confirmation hearing. July 7, 2007 Hearing Transcript, Doc.

No. 13070, at 174. The Lambert Amended Report reflects certain revisions to the Lambert Report filed on June 4, 2007 at Doc. No. 12570)

45. Fasman Declaration, Doc. No. 12931, at 20; Lambert Amended Report at 3.1.2; Fasman Deposition, Doc. No. 12877, Exh. 3, at 53.

46. June 21, 2007 Hearing Transcript, Doc. No. 12880, at 23.

47. Fasman Deposition, Doc. No. 12877, Exh. 3, at 292.

48. *Id.* at 297–298.

ings Corporation was renamed Pneumo Abex Corporation, which is a different legal entity from the aforementioned Pneumo Abex Corporation that was part of the 1990 "roll-up."

In 1992, the Henley Group engaged in a series of transactions, the net effect of which was to spin off Pneumo Abex Corporation into an entity that would be independent of the Henley Group. Specifically, the owner of the Pneumo Abex Corporation, Henley Investment Inc. (a subsidiary of The Henley Group, Inc.) changed its name to Abex Inc. in 1992.[49] Then, pursuant to an Agreement and Plan of Merger dated as of March 26, 1992, The Henley Group, Inc. distributed all of the issued and outstanding shares of the common stock of Abex Inc. to the holders of the common stock of The Henley Group, Inc. Concurrent with the Agreement and Plan of Merger, The Henley Group, Inc., through multiple transactions, transferred certain of its assets and liabilities to Pneumo Abex Corporation.[50] The net result of this transaction was that Abex no longer held a corporate relationship with The Henley Group.[51]

Pursuant to an asset purchase agreement dated November 21, 1994 (the "1994 APA"), Pneumo Abex Corporation sold certain of the assets of its friction products division (assets associated with its automotive brake business) to Wagner Electric Corporation ("Wagner"), an indirect subsidiary of Cooper Industries, Inc.[52] The assets Wagner acquired included real property, leases, machinery, equipment, furniture, computers, motor vehicles, tools, parts, raw materials, supplies license agreements, computer software, business books and records, credits, security deposits, accounts and notes receivable, and others. In the 1994 APA, Wagner agreed to indemnify Pneumo Abex for certain of its liabilities, including certain asbestos-related liabilities.[53] The indemnity provision in Section 2.3 of the 1994 APA states that Wagner "shall assume and become liable for, and shall pay, perform and discharge as and when due all of the Assumed Liabilities." The indemnity provisions allocated liabilities between Wagner and Pneumo Abex. They did not impact the claims against either party that may be brought directly by an asbestos claimant.[54] Section 13.3 of the 1994 APA states that "this Agreement is not intended to confer upon any Person not a party hereto ... any right or remedies hereunder." In connection with the 1994 Transaction, Abex Inc. and Cooper Industries, Inc., entered into a Mutual Guaranty Agreement, dated December 30, 1994.[55] Under the Mutual Guaranty Agreement, Cooper Industries, Inc. and Abex Inc. each guaranteed "the full and faithful performance of their respective subsidiaries (Pneumo Abex and Wagner, respectively) with respect to the [1994] asset purchase agreement."[56]

**49.** Lambert Declaration, Doc. No. 12570, § 3.4.1.

**50.** Lambert Declaration, Doc. No. 12570, § 3.4.2.

**51.** *Id.*

**52.** 1994 APA, Doc. No. 12606, Exh. 14.

**53.** 1994 APA §§ 2.3 & 11.3, Doc. No. 12606, Exh. 14; Fasman Declaration, Doc. No. 12931, at 24–25; Schumacher 6/29/07 Revised Decl., Doc. No. 12936, at 5.

**54.** 1994 APA §§ 11.3 & 13.3, Doc. No. 12606, Exh. 14.

**55.** Fasman Declaration, Doc. No. 12931, at 26; Schumacher Declaration, Doc. No. 12936, at 6; Helz Revised Declaration, Doc. No. 12937, at 11.

**56.** Mutual Guaranty Agreement, Doc. No. 12606, Exh. 15, at 1; Fasman Deposition, Doc. No. 12877, Exh. 3, at 222–223; Fasman Declaration, Doc. No. 12931, at 27; Lambert Amended Report § 3.4.4; Schumacher Decla-

In 1996, Wagner merged into another Cooper subsidiary, Moog Automotive, Inc., leaving Moog as the surviving entity. Under a stock purchase agreement between Cooper Industries, Inc. and Federal–Mogul Corporation ("FMC") dated August 17, 1998 (the "1998 PSA"), Cooper Industries sold its automotive products business (shares of Moog, along with other assets) to Federal–Mogul Corporation.[57] Pursuant to the 1998 PSA, Federal–Mogul Corporation assumed Cooper Industries, Inc.'s mutual guaranty obligations related to the 1994 APA and indemnified Cooper for any liability related to the mutual guaranty.[58] Following this transaction, Moog Automotive Products, Inc. (as Moog Automotive, Inc. was renamed in 1998) changed its name to Federal Mogul Products, Inc. ("FMP"). FMP, in its capacity as the successor to the indemnity obligation originally undertaken by Wagner in the 1994 APA, took responsibility for handling the Pneumo Asbestos Claims. After August 29, 1998, "[a]n asbestos-related claim arising out of the friction products division received … by Pnemo Abex would have been subject to the assumed liabilities under the APA and indemnified by [FMP]." [59] In total, FMP defended more than 10,000 Pneumo Asbestos Claims.[60] On October 1, 2001, the Debtors filed 157 Chapter 11 cases and complementary administrations for 134 of the Debtors in the United Kingdom. On the petition date, "Pneumo Abex called upon Cooper to perform under its mutual guaranty obligation." Cooper took responsibility for managing the claims and "has performed under that guaranty [ever] since." [61]

## B. SUMMARY OF FMP/FMC INDEMNITIES AND GUARANTEES

As is shown by the history of corporate transactions and agreements, there are several remaining obligations between Pneumo Abex, Cooper, FMP, and FMC related to the Pneumo Asbestos Claims. The obligation that runs in favor of Pneumo Abex, in simplified form, can be described thus: Pursuant to the 1994 APA, Wagner indemnified Pneumo Abex for certain asbestos related liabilities, i.e., asbestos-related personal injury claims against Pneumo Abex and its affiliates received after August 29, 1998—the Pneumo Asbestos Claims. Wagner later merged into Moog which was sold to FMC in 1998. After the sale, Moog's name was changed to Federal–Mogul Products, Inc. (FMP). FMP now owes to Pneumo Abex the indemnity that was originally provided by Wagner in the 1994 APA. The obligations that arise from the relationship with Cooper are twofold. The first concerns a guaranty. In connection with the 1994 APA, Cooper gave a Mutual Guaranty Agreement to guarantee Wagner's performance under the indemnity it granted in favor of Pneumo Abex. When FMC purchased Moog (now known as FMP), FMC assumed that guaranty. Thus, FMC is now the guarantor of FMP's performance of

ration, Doc. No. 12936, at 6; Helz Revised Declaration, Doc. No. 12937, at 11.

**57.** Helz Revised Declaration, Doc. No. 12937, at 14.

**58.** Lambert Amended Report § 4.3.1; Schumacher Declaration, Doc. No. 12936, at 9–10.

**59.** Fasman Deposition, Doc. No. 12877, Exh. 3, at 235.

**60.** Fasman Declaration, Doc. No. 12931, at 49.

**61.** Fasman Deposition, Doc. No. 12877, Exh. 3, at 237; Fasman Declaration, Doc. No. 12931, at 51; Schumacher Declaration, Doc. No. 12936, at 15; Helz Revised Declaration, Doc. No. 12937, at 20.

the indemnity owed to Pneumo Abex. The second obligation is an indemnity owed to Cooper. To the extent that Cooper is ever called upon to perform under its guaranty, FMC indemnified Cooper and agreed to defend and hold Cooper harmless against Cooper's obligations under the mutual guaranty. Thus, Cooper may hold unliquidated contingent claims against FMC and holds liquidated noncontingent claims to the extent that it has performed on the guaranty. The bottom line is that both Pneumo Abex and Cooper, now or in the future, may hold claims against FMP or FMC related to the intricacies of the contractual relationships of the parties. What is equally as clear is that the Pneumo Asbestos Claims evolved from the conduct and products of Pneumo Abex and its predecessors and not in any way from the conduct of, claims against or demands on the Debtors.

## C. SECTION 524(g) REQUIRE-MENTS FOR THIRD PARTY INJUNCTION

Section 524(g) of the Bankruptcy Code provides that a plan of reorganization may provide injunctive protection to a third party in certain circumstances. As relevant here, the statute provides that a third party may receive the benefits of the channeling injunction when that third party "is alleged to be directly or indirectly liable for the conduct of, claims against, or demands on the debtor." 11 U.S.C. § 524(g)(4)(A)(ii).

■ Under § 524(g)(4), the third party may receive protection of the channeling injunction only "to the extent" that its alleged liability "arises by reason of—(I) the third party's ownership of a financial interest in the debtor, a past or present affiliate of the debtor, or a predecessor in interest of the debtor; (II) the third party's involvement in the management of the debtor or a predecessor in interest of the debtor, or service as an officer, director or employee of the debtor or a related party; (III) the third party's provision of insurance to the debtor or a related party; or (IV) the third party's involvement in a transaction changing the corporate structure, or in a loan or other financial transaction affecting the financial condition, of the debtor or a related party ..." [62] The relationships asserted by the Plan Supporters in this case are ownership of a predecessor in interest, management of a predecessor in interest, and involvement in a transaction changing the corporate structure of a predecessor in interest of the Debtor, Federal–Mogul Products, Inc.

Plan A Settlement Objectors argue that the Abex Brake Business, a former unincorporated division of Pneumo Abex Corporation, cannot be a "predecessor in interest" for purposes of the relationships asserted by Plan Supporters because it lacks existence as a legal entity or status as a juridical "person." As described above, Pneumo Abex Corporation sold the Abex Brake Business to Wagner pursuant to the 1994 APA. As mentioned above, the parties continue to disagree regarding the characterization of certain facts in the transactional history. Notable among these disparities is the characterization of the assets purchased by Wagner under the 1994 APA. Plan Supporters always refer to the assets as the Abex Brake Business and describe it as "a complete, ongoing business" or "highly visible, clearly defined and complete operating business." [63] Plan

---

**62.** 11 U.S.C. § 524(g)(4)(A)(ii).

**63.** *See* Plan Supporters Proposed Findings of Fact and Conclusions of Law Regarding Approval of the Addendum of Additional Provisions Incorporated Into Joint Plan of Reorganization (Pneumo Abex "Plan A" Settlement), Doc. No. 13144, at 10; Joint Post–Confirma-

A Settlement Objectors refer to the assets as "certain assets of [Pneumo Abex Corporation's] friction products division" or "collection or cluster of assets."[64] Regardless of the characterizations, it is undisputed that the Abex Brake Business was an unincorporated division of Pneumo Abex and that the 1994 Sale was an asset sale, not a stock sale.

The concepts of "predecessor in interest" and "successor in interest" stem from the basic principle of corporate law that corporations are independent legal "persons," who, like natural persons, may sue and be sued.[65] The rights and obligations of corporate entities can thus be passed on to successor entities through merger or other changes in corporate form.[66] Operating divisions of corporations that are not themselves incorporated, such as the Abex Brake Business, are not legal persons. Plan A Settlement Objectors provided a number of cases that support the concept that unincorporated divisions of corporations and other such clusters of assets lack the capacity to sue or be sued.[67] As such, the Abex Brake Business is not a legal entity recognized by corporate law. Stephen Fasman, President of Pneumo Abex, LLC acknowledged at his deposition that the Abex Brake Business lacks "legal personality."[68]

Consistent with these basic principles of corporate law, the term "predecessor in interest" in § 524(g) must denote an entity with a distinct legal identity, which has rights and obligations, recognized by law, that can be passed on to a successor. An unincorporated operating division of a corporation, which is not itself a legal entity with any rights or interests, cannot pass any rights or interests to a successor. Nor can such an unincorporated division be sued. Rather, any liabilities arising out of the operations of such a division run against the corporation that contains the division. As such, the liabilities arising out of the friction products division ran against Pneumo Abex, not just its unincorporated division. Purchase of the Abex Brake Business alone would not have transferred these liabilities; rather, it was a contractual indemnity agreement contained in the 1994 APA which transferred these liabilities to Wagner. Plan Supporters submitted a number of cases intended to support the contention that an unincorporated division could be a prede-

tion Hearing Memorandum Of Certain Plan Proponents, Cooper Industries, LLC and Pneumo Abex LLC In Support of the "Plan A" Addendum to the Fourth Amended Joint Plan of Reorganization, Doc. No. 582593565, at 5.

64. *See* Plan Objectors' Proposed Findings of Fact and Conclusions of Law, Doc. No. 13143, Tab 1, at 5.

65. 18 Am Jur 2d Corporations § 2; *Trustees of Dartmouth College v. Woodward*, 4 Wheat. 518, 17 U.S. 518, 667–68, 4 L.Ed. 629 (1819).

66. 1 William Blackstone, Commentaries on the Laws of England 455 (1765–1769) (unlike "persons in their natural capacities," corporations "shall never die ... which means that all the original rights ... are preserved to the successor"). *See also* Samuel Williston, History of Law of Business Corporations Before

1800, 2 Harv. L.Rev. 3, 115 (1888); *see generally* Henry Hansmann & Reiner Kraakman, The Essential Role of Organizational Law, 110 Yale L.J. 387 (2000).

67. *Moffat Tunnel League v. United States*, 289 U.S. 113, 118, 53 S.Ct. 543, 77 L.Ed. 1069 (1933); *Babich v. Karsnak*, 364 Pa.Super. 558, 528 A.2d 649, 653 (1987); *AK Steel Corp. v. Viacom, Inc.*, 835 A.2d 820, 824 (Pa.Super.2003) ("[A] division of a corporation is not a separate legal entity capable of being sued ... [A]n unincorporated association is not a legal entity and has no legal existence.").

68. Fasman Deposition, Doc. No. 12877, Exh. 3, at 200.

cessor in interest.[69] However, none of the cited cases support the proposition. Rather, the term "predecessor in interest" was used in passing to describe an operating division of a company and the use of the term was wholly irrelevant to the court's holding.

The Plan Supporters' contention that Pneumo Abex's liability arises by reason of ownership of a predecessor in interest, management of a predecessor in interest, and involvement in a transaction changing the corporate structure of a predecessor in interest of the Debtors, Federal–Mogul Products, Inc., fails because the "Abex Brake Business" was not a predecessor in interest of the Debtors. Pneumo Abex may have a contractual indemnification claim against FMP, but Pneumo Abex did not own or manage a predecessor in interest of the Debtors and was not party to a transaction that changed the corporate structure of a predecessor in interest of a debtor.

■ Even if this court's ruling on predecessor interest is incorrect, the mere existence of one or more of a predecessor in interest relationship in § 524(g)(4)(A)(ii) is insufficient, unless the third party's liability is alleged to rise "by reason of" the relationship. *In re Combustion Engineering Inc.,* 391 F.3d 190, 235 (3d Cir.2004). An action alleging a nondebtor third party's asbestos liability may be enjoined under § 524(g) only "to the extent such liability of such third party arises by reason of"

one of the four statutorily prescribed relationships with the debtor. 11 U.S.C. § 524(g)(4)(A)(ii); *Id.*

In this case, Pneumo Abex is not alleged to be liable "by reason of" any relationship with Federal–Mogul Products or any other Debtor. It is alleged to be liable by reason of its own conduct. Pneumo Abex Corporation and its predecessors historically manufactured, distributed, and sold asbestos containing products. Pneumo Abex's alleged liability arises because of its actions, and the actions of its agents and employees for which Pneumo Abex Corporation, as the principal, is legally responsible.[70] As a result of Pneumo Abex Corporation's actions and the actions of its employees, Pneumo Abex or a related entity has been sued in 240,000 claims.[71] The allegations against Pneumo Abex do not include alleged liability based on Pneumo Abex holding an interest in the Debtor, a predecessor in interest of the Debtor, or any other entity. Pneumo Abex would have been sued for injuries alleged to have resulted from the products it distributed regardless of the relationship between it and Wagner (which, following a merger and a stock sale, has become FMP).

■ Similarly, Cooper's alleged liability does not arise by reason of one of the four relationships in § 524(g)(4)(A)(ii). While Cooper did at one time have a financial interest in a Debtor (Wagner, now Federal Mogul Products), its liability arises not

**69.** *In re Bicoastal Corp.,* 134 B.R. 50, 53 (Bankr.M.D.Fla.1991); *Jamesbury Corp. v. Litton Ind. Prods., Inc.,* 839 F.2d 1544, 1546 (Fed.Cir.1988); *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,* 960 F.2d 1020 (Fed.Cir. 1992); *Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.,* 103 F.Supp.2d 711, 713 (S.D.N.Y.2000); *Olejniczak v. E.I. Du Pont & De Nemours & Co.,* 998 F.Supp. 274, 281 (W.D.N.Y.1998); *Fisher–Price, Inc. v. Well–Made Toy Mfg. Corp.,* 28 U.S.P.Q.2d 1623, 1625, 1993 WL 470851, 1993 U.S. Dist.

LEXIS 6347, at *8 (W.D.N.Y. May 12, 1993); *Fisher–Price, Inc. v. Well–Made Toy Mfg. Corp.,* 25 F.3d 119 (2d Cir.1994); *Peeke v. Penn Cent. Transp. Co.,* 403 F.Supp. 70, 71 (E.D.Pa.1975).

**70.** Fasman Deposition, Doc. No. 12877, Exh. 3, at 296.

**71.** June 21, 2007 Hearing Transcript, Doc. No. 12880, at 84.

from its ownership or management of Federal Mogul Products (which never manufactured, distributed, or sold asbestos-containing products) but from its contractual obligations to Pneumo Abex under the Mutual Guaranty Agreement.

■ The Third Circuit held in *Combustion Engineering* that, "[i]mportantly for this case, § 524(g) limits the situations where a channeling injunction may enjoin actions against third parties to those where a third party has derivative liability for the claims against the debtor" and that "both the plain language of the statute and its legislative history make clear that § 524(g) provides no specific authority to extend a channeling injunction to include third-party actions against non-debtors where the liability alleged is not derivative of the debtor." *In re Combustion Engineering*, 391 F.3d 190, 236 (3d Cir.2005). The statute does not permit extension of a channeling injunction to cover "claims ... alleg[ing] independent liability, wholly separate from any liability involving [the debtor]." *Id.* at 235. Because the claims against Pneumo Abex and Cooper do not derive in any way from liability of the Debtors, they cannot be enjoined and channeled under § 524(g). Cooper and Pneumo Abex are not being sued by Pneumo Asbestos Claimants based on "the conduct of", "claims against", or "demands on" the Debtors; the Debtors did not manufacture, distribute, or sell the friction products at issue. Cooper and Pneumo Abex are not alleged to be liable for the "conduct of", "claims against", or "demands on" the Debtors. Rather, the Pneumo Abex Claimants have claims against Pneumo Abex which Cooper is allegedly required to indemnify by virtue of the Mutual Guaranty Agreement. In turn, FMC has agreed to indemnify Cooper if Cooper is called on to perform on its guaranty, thus giving

Cooper contingent and unliquidated claims against a Debtor. To the extent a Debtor is ever alleged to be liable in this claim, the liability all stems from Pneumo Abex's conduct and products. Therefore, it is the Debtors' alleged liability that is derivative of Pneumo Abex's.

## D. NECESSITY TO REORGANIZATION

The Plan A Settlement Objectors argue that the Pneumo Protected Party Injunction must be necessary to the Debtors' reorganization in order for the Plan A Settlement to be approved. The Plan Supporters argue that the availability of a third party injunction pursuant to § 524(g) is not conditioned upon a showing that such an injunction will "enhance" a debtor's discharge or a showing that such an injunction is "necessary" to a debtor's reorganization.

In enacting section § 524(g) Congress recognized that it was providing an extraordinary remedy for debtors overwhelmed by asbestos-related liabilities. *See* e.g. 11 U.S.C. § 524(g)(2)(B)(ii)(I), (III) (requiring that the court determine that the debtor is likely to be subject to substantial future demands and that pursuit of such demands will threaten the purpose of the plan to deal equitably with claims and future demands); H.R.Rep. No. 103–835, at 41 (1994), reprinted in 1994 U.S.C.C.A.N. 3340, 3350 (the "asbestos trust/injunction mechanism established in [section 524(g)] is available for use by any asbestos company facing a[n] overwhelming liability" like that in the *Johns–Manville* case). The undisputed evidence at the confirmation hearing was that the Debtors could successfully reorganize with the Plan B Settlement and did not need the Plan A Settlement for that purpose.[72]

**72.** *See* Testimony of John Gasparovic, former

Senior Vice President and General Counsel of

The Debtors' successful reorganization has now come to pass with the Plan B Settlement and the Debtors have publicly touted their strong business prospects after a successful reorganization.[73]

■■■ Plan Supporters are correct, as Plan A Settlement Objectors concede,[74] in asserting that § 524(g) does not absolutely require a showing that extending the benefit of the injunction to a third party is crucial to the reorganization. However, that hardly means that the injunction should issue in a case in which the debtor's reorganization is indifferent to it. A bankruptcy court is never required to issue a § 524(g) injunction[75] and the benefits to reorganization (or lack thereof) is a significant factor for a bankruptcy court to consider before providing such an extraordinary remedy to a non-debtor third party. In reversing the third party injunction in *Continental Airlines*, albeit not a § 524(g) injunction, the Third Circuit emphasized that there was "nothing in the record to even imply that the success of the Continental Debtors' reorganization bore any relationship to the release and permanent injunctions of the Plaintiff's class actions." *In re Continental Airlines*, 203 F.3d 203, 215 (3d Cir.2000). Nothing in the text of § 524(g) suggests that this principle should be discarded in the § 524(g) context. The Plan A Settlement is not necessary for the Debtors' successful reorganization, but rather is designed solely for the benefit of Cooper and Pneumo Abex, giving them the benefit of channeling their non-derivative claims to a trust without the cost, court supervision, public scrutiny, and other restrictions imposed upon entities who file for bankruptcy. As *Combustion Engineering* teaches, this is not the type of third party injunction contemplated by § 524(g).

### E. CONCLUSION

For the reasons discussed, the Plan Supporters' request for approval and implementation of the Modified Plan A Settlement is denied. The Plan A Settlement Agreement fails to comply with the requirements of § 524(g). The Pneumo Protected Parties (Cooper, Pneumo Abex, and certain affiliates) do not qualify for the protection of a third party injunction under 11 U.S.C. § 524(g)(4)(A)(ii). Additionally, the Pneumo Protected Party Injunction is not necessary for the successful reorganization of the Debtors.

The Plan B Settlement is a more traditional and appropriate resolution of the claims against the Debtors which arise from indemnification agreements in the Debtors' transactional history. As stated above, the Plan B Settlement has already been approved in conjunction with confirmation of the Plan.

An appropriate order will be entered.

---

Federal Mogul, Inc., July 10, 2007 Hearing Transcript, Doc. No. 13070, at 60–62.

**73.** *See* Steve Gelsi & Marie Beaudette, Federal–Mogul Corp Exits Chapter 11 Protection After 6 Years, Dow Jones Daily Bankr.Rev., Jan. 3, 2008, at 8 (noting the issuance of new stock under the confirmed plan, quoting Federal–Mogul Chief Executive Officer Jose Maria Alapont as saying "[w]e begin 2008 with confidence in our future and we are well positioned with our global strategy for sustainable profitable growth").

**74.** Brief of Certain Insurers in Response to Modifications to the Addendum of Additional Provisions Incorporated Into Joint Plan of Reorganization ("Plan A"), Doc. No. 14058, at 9.

**75.** The text of 11 U.S.C. § 524(g) makes clear that a court "may issue" an injunction if the statutory requirements are met.

In re: FEDERAL–MOGUL GLOBAL INC., T & N LIMITED, et al.,[76]

## ORDER

**AND NOW,** this 30th day of September, 2008, for the reasons stated in the foregoing Memorandum Opinion, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the Protected Party Injunction, as provided in the Addendum of Additional Provisions Incorporated into Joint Plan of Reorganization (Pneumo Abex "Plan A" Settlement), fails to comply with 11 U.S.C. § 524(g). Therefore, the Plan Supporters' request for approval and implementation of the Modified Plan A Settlement is **DENIED.**

It is **FURTHER ORDERED** that counsel for the Reorganized Debtors shall immediately serve a copy of this Memorandum Opinion and Order on all parties in interest who do not receive electronic notice and shall file proof of service forthwith.

**76.** The U.S. Debtors (collectively, the "U.S. Debtors") are Carter Automotive Company, Inc., Federal–Mogul Corporation, Federal–Mogul Dutch Holdings Inc., Federal–Mogul FX, Inc., Federal–Mogul Global Inc., Federal–Mogul Global Properties, Inc., Federal–Mogul Ignition Company, Federal–Mogul Machine Tool, Inc., Federal–Mogul Mystic, Inc., Federal–Mogul Piston Rings, Inc., Federal–Mogul Powertrain, Inc., Federal–Mogul Products, Inc., Federal–Mogul Puerto Rico, Inc., Federal–Mogul U.K. Holdings, Inc., Federal–Mogul Venture Corporation, Federal–Mogul World Wide, Inc., Felt Products Manufacturing Co., FM International LLC, Ferodo America, Inc., Gasket Holdings Inc., J.W.J. Holdings, Inc., McCord Sealing, Inc., and T & N Industries Inc.

Those Debtors that are incorporated under the laws of England and Wales or Scotland and are subjects of the Plan (collectively, the "U.K. Debtors") are AE Piston Products Limited, Aeroplane & Motor Aluminum Castings Limited, Ashburton Road Services Limited, Brake Linings Limited, Duron Limited, Edmunds, Walker & Co. Limited, Federal–Mogul Aftermarket U.K. Limited, Federal–Mogul Bradford Limited, Federal–Mogul Bridgewater Limited, Federal–Mogul Camshaft Castings Limited, Federal–Mogul Camshafts Limited, Federal–Mogul Engineering Limited, Federal–Mogul Eurofriction Limited, Federal–Mogul Friction Products Limited, Federal–Mogul Global Growth Limited, Federal–Mogul Ignition (U.K.) Limited, Federal–Mogul Powertrain Systems International Limited, Federal–Mogul Sealing Systems (Cardiff) Limited, Federal–Mogul Sealing Systems (Rochdale) Limited, Federal–Mogul Sealing Systems (Slough) Limited, Federal–Mogul Sealing Systems Limited, Federal–Mogul Shoreham Limited, Federal Mogul Sintered Products Limited, Federal–Mogul Systems Protection Group Limited, Federal–Mogul Technology Limited, Ferodo Caernarfon Limited, Ferodo Limited, Fleetside Investments Limited, F–M U.K. Holding Limited, Friction Materials Limited, Greet Limited, Halls Gaskets Limited, Hepworth & Grandage Limited, J.W. Roberts Limited, Lanoth Limited, Newalls Insulation Company Limited, TAF International Limited, T & N Holdings Limited, T & N International Limited, T & N Investments Limited, T & N Limited, T & N Materials Research Limited, T & N Piston Products Group Limited, T & N Properties Limited, T & N Shelf Eighteen Limited, T & N Shelf Nineteen Limited, T & N Shelf One Limited, T & N Shelf Seven Limited, T & N Shelf Three Limited, T & N Shelf Twenty Limited, T & N Shelf Twenty–One Limited, T & N Shelf Twenty–Six Limited, TBA Belting Limited, TBA Industrial Products Limited, Telford Technology Supplies Limited, The Washington Chemical Company Limited, Turner & Newall Limited, Turner Brothers Asbestos Company Limited, and Wellworthy Limited. Certain additional U.K. affiliates of the U.S. Debtors and U.K. Debtors have commenced chapter 11 cases but are not subjects of the Plan.